Dale F. **GILBERT** et al., Plaintiffs,

v.

**ALLIED CHEMICAL CORPORATION and Hooker Chemicals and Plastics Corporation, Defendants.**

**Civ. A. No. 75–0469–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

April 6, 1976.

Robert B. Smith, III, Edward W. Taylor, James D. Hundley, Hundley, Taylor & Glass, Richmond, Va., for plaintiffs.

Joseph M. Spivey, III, Hill B. Wellford, Jr., G. H. Gromel, Hunton & Williams, Willard I. Walker, McGuire, Woods & Battle, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on a claim by the individual plaintiffs against the defendants for personal injuries allegedly suffered as a result of contact with chemical components involved in the production of a chemical substance sold under the trade name of Kepone. Plaintiffs are all citizens of the Commonwealth of Virginia. Defendant Allied Chemical Corporation (hereinafter "Allied") is a New York corporation with its principal place of business in the State of New Jersey; defendant Hooker Chemicals and Plastics Corporation (hereinafter "Hooker") is a New York corporation with its principal place of business within that state. The matter in controversy for each plaintiff, exclusive of interest and cost, exceeds the sum of Ten Thousand Dollars ($10,000). Jurisdiction over the action is conferred by virtue of the diversity statute, 28 U.S.C. § 1331.

In the process of pre-trial discovery, defendant Allied requested a subpoena be issued requiring Nationwide Communications, Inc. (hereinafter "Nationwide"), a non-party which operates a radio station, WLEE and a television station, WXEX, to produce, pursuant to Rule 45(d) of the Federal Rules of Civil Procedure, the following:

> With respect to WLEE radio and WXEX–TV, please bring with you: All documents, transcripts, memoranda, writings and recordings of any nature whatsoever of all news stories, editorials, opinion polls, questionnaires, dialogues or conversations that have been broadcasted *or drafted, taken, made or secured in contemplation of being broadcasted* since January 1, 1973, in respect of or in any wise connected to the chemical compound popularly called Kepone. (Emphasis added.)

Nationwide moved the Court to quash the subpoena pursuant to Rules 26(b) and 45(b) of the Federal Rules of Civil Procedure on the grounds that the subpoena seeks privileged information, is unreasonable and oppressive, and seeks irrelevant information beyond the permissible scope of discovery. Nationwide subsequently agreed, however, to produce, and has in fact produced at the time designated in the subpoena, all "published" material and tapes—that is, all news items on Kepone that were actually broadcast by WLEE and WXEX–TV, or otherwise made available to the public. Representatives of Nationwide continue to refuse to testify in reference to or produce material in the unpublished files or records of its stations contending that its unpublished records are privileged under the First Amendment, that the production of such records pursuant to subpoena would amount to an unlawful taking of property without due process of law as guaranteed by the Fourteenth Amendment, and that the subpoena is unreasonably burdensome.

In response to the Court's request, Nationwide has filed a document characterizing those records and files withheld from Allied pursuant to its motion to quash. WLEE radio station lists (1) a file containing information from other media sources including newspaper clippings, (2) a file containing reporters' notes, and (3) a file containing notes of its editorialist and documents secured by him in confidential conversations. WXEX–TV lists (1) a file containing newspaper clippings, (2) a file containing reporters' notes, (3) a file containing unedited draft scripts, (4) a file containing an accumulation of documents, press releases, and information on Kepone from various sources, and (5) a file containing United Press International wire service copy. Allied's position is that the subpoena is necessary to secure information in support of a motion for a change of venue on the grounds of prejudicial pre-trial publicity, and to provide information on the subject

matter of the lawsuit that may be helpful in organizing and preparing the case.

The General Manager and the News Director of WLEE Radio and the News Director of WXEX–TV, have submitted affidavits indicating that *inter alia* on numerous occasions they acquired information from a source only on the guarantee that the source's identity would not be disclosed, that such information has been immensely important in providing background information which enables the reporter to gather news more effectively and to critically analyze news and information otherwise accumulated, and that disclosure of such unpublished information could so destroy the reputation of reporters for credibility and trustworthiness that he or she may be forced to move to another locality to continue an effective career. The affiants also state that ordering the disclosure of those unpublished materials, which consist of accumulations of information from other media sources such as wire service copy, newspaper clippings, and press releases, would reveal information on the slant a reporter was taking on a particular story, may reflect the following up of confidential leads, and would place a severe burden on reporters and station personnel in that they would have to spend a great amount of time reviewing unpublished materials to discern which material may or may not be considered as emanating from confidential sources. Furthermore, the affiants state that if access to its non-confidential but unpublished files is permitted, the cost burden and the potential of revealing confidential sources would require the stations to re-evaluate their information retention policies, even though the quality of their newscast would suffer if the retention policy was eliminated.

The Court recognizes that to effectively gather information for the conveyance of news to the public, it is often necessary for reporters to make assurances either not to identify the source of the information broadcast or published, or to broadcast or publish only part of the information obtained, or both. If a news station or newspaper is forced to reveal the confidences of its reporters, the sources so disclosed, other confidential sources of other reporters, and potential confidential sources will be significantly deterred from furnishing further information to the press. Information lost to the press is information lost to the public; unnecessary impediments to a newsman's ability to gather facts, follow leads, and assimilate sources can restrict the quality of our news as effectively as censorship activities. Accordingly, the Court holds that the First Amendment, protecting as it does the free flow of information, provides newsmen a privilege from revealing their confidential news sources in civil proceedings that may be abrogated only in rare and compelling circumstances. See *Bursey v. United States,* 466 F.2d 1059 (9th Cir. 1972); *Baker v. F & F Investment Company,* 470 F.2d 778 (2d Cir. 1972); *Loadholtz v. Fields,* 389 F.Supp. 1299 (M.D.Fla.1975); *Democratic National Committee v. McCord,* 356 F.Supp. 1394 (D.C.1973); *Apicella v. McNeil Laboratories, Inc.,* 66 F.R.D. 78 (E.D.N.Y.1975); *Brown v. Commonwealth,* 214 Va. 755, 204 S.E.2d 429 (1974); *State of Vermont v. St. Peter,* 132 Vt. 266, 315 A.2d 254 (1974). See also *United States v. Liddy,* 354 F.Supp. 208, 213 (D.C.1972).

*Branzburg v. Hayes,* as contended, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) is not apposite. In *Branzburg,* the Supreme Court held that newsmen are required to respond to grand jury subpoenas, and answer questions relevant to an investigation into the commission of a crime, though it forces the newsmen to reveal confidential sources and material. The Court did not, however, hold that the First Amendment offers no protection to the press from subpoenas. The majority opinion, written by Mr. Justice White, and joined by Justices Blackmun, Rehnquist and Chief Justice Burger, expressly limited the scope of the opinion to grand jury subpoenas. 408 U.S. at 682, 92 S.Ct. at 2656, 33 L.Ed.2d at 639. Furthermore, even in the grand jury setting, it is clear that the First Amendment has application to afford newsmen some constitutional protections.

Nor is it suggested that news gathering does not qualify for First Amendment protection; without some protection for seeking out the news, freedom of the press would be eviscerated. 408 U.S. at 681, 92 S.Ct. at 2656, 33 L.Ed.2d at 639. Finally, as we have earlier indicated, news gathering is not without its First Amendment protections, and grand jury investigations if instituted or conducted other than in good faith, would pose wholly different issues for resolution under the First Amendment . . .

We do not expect courts will forget that grand juries must operate within the limits of the First Amendment as well as the Fifth. 408 U.S. at 707, 92 S.Ct. at 2670, 33 L.Ed.2d at 655.

In forcing newsmen to testify before grand juries on relevant information that had come to their attention, however, the Supreme Court struck a balance between the significance of the newsmen's First Amendment rights and the public's interest in pursuing investigations of criminal activity.

Fair and effective law enforcement aimed at providing security for the person and property of the individual is a fundamental function of government, and the grand jury plays an important, constitutionally mandated role in this process. On the records now before us, we perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial.

Mr. Justice Powell's concurring opinion restated the position:

The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligations of all citizens to give relevant testimony with respect to criminal conduct. The balance of these

vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions. 408 U.S. at 710, 92 S.Ct. at 2671, 33 L.Ed.2d at 656.

The majority opinion assessed the relative importance of the newsmen's function with his confidences intact and the investigative function of the grand jury, roles that were in direct conflict in the case, and concluded that the role of the grand jury as an important instrument of effective law enforcement mandated that it have access to newsmen's sources if relevant to its investigation, regardless of alleged breaches of confidentiality. While some of the Court's buttressing statements question the strength of the newsmen's position in a general fashion, i. e. without reference to newsmen testifying exclusively in front of grand juries or in criminal trials, e. g. 408 U.S. at 698, 92 S.Ct. at 2665, 33 L.Ed.2d at 649, the statements must not be taken out of context to abrogate the concept of a newsman's privilege in other contexts. A different context requires that a different balance be struck.

It should also be noted, that if one has difficulty with such an interpretation of the majority opinion, Mr. Justice Powell's concurring opinion, which is explicit on the point, may be joined with Mr. Justice Stewart's dissenting opinion, joined by Justices Brennan and Marshall, and with Mr. Justice Douglas' dissenting opinion, to provide a majority of five justices that would accept the proposition that newsmen are entitled to at least a qualified First Amendment privilege. Mr. Justice Stewart opined that when a reporter is asked to appear before a grand jury and reveal confidences, the government should show that there is probable cause to believe that the newsman has information that is clearly relevant to a specific probable violation of law, demonstrate that the information sought cannot be obtained by alternative means less destructive of First Amendment rights, and demonstrate a compelling and overriding interest in the information. These special burdens are necessary because

In striking the proper balance between the public interest in the efficient administration of justice and the First Amendment guarantee of the fullest flow of information, we must begin with the basic proposition that because of their "delicate and vulnerable" nature, *NAACP v. Button,* 371 U.S. [415] at 433 [83 S.Ct. 328 at 338, 9 L.Ed.2d 405] and their transcendent importance for the just functioning of our society, First Amendment rights require special safeguards. 408 U.S. at 738, 92 S.Ct. at 2678, 33 L.Ed.2d at 673.

Mr. Justice Douglas, in his dissent, advocated an absolute First Amendment privilege for newsmen:

My belief is that all of the "balancing" was done by those who wrote the Bill of Rights. 408 U.S. at 713, 92 S.Ct. at 2687, 33 L.Ed.2d at 658.

The minimum common denominator of all the views expressed, is the opinion of Mr. Justice Powell, that a qualified First Amendment privilege does exist to protect newsmen's confidential sources.

In short, the courts will be available to newsmen under circumstances where legitimate First Amendment interests require protection. 408 U.S. at 710, 92 S.Ct. at 2671, 33 L.Ed.2d at 656.

Justices Stewart, Douglas, and Powell differed on the strength of that privilege when weighed against the needs of our country's criminal proceedings.

█ In the context of a civil trial, the rationales for forcing a newsman to reveal his confidences are much less weighty than those involved in criminal proceedings. For example, in such a context, one cannot validly contend that a newsman is concealing the criminal conduct of his source, or shielding the anonymity of criminal figures. Allied's purpose in securing the unpublished files of WLEE and WXEX–TV is primarily to obtain information that may aid in its trial preparation and presentation. Its need to obtain information in support of its proposed motion for a change of venue was satisfied by WLEE's and WXEX–TV's pro-

vision of all the items, both as to content and quantity, communicated to the public on the Kepone matter. The venue argument is based on the alleged prejudicial effects of the heavy publicity on the subject matter of the case, and Nationwide's contribution to such publicity has been disclosed in full. Indeed, the Court has in the course of other proceedings in connection with the case, expressed its cognizance of the almost daily publicity on the subject. We are left, therefore, solely with Allied's contention that the materials are necessary for the purposes of general discovery. While there is a social interest in resolving conflicts with justice and fairness between private litigants, and the rules of compulsory process are intended to further that interest, the gain in information achieved by forcing newsmen to reveal their confidences must be weighed against the restricted access that newsmen would have to their informational sources if such a procedure is adopted. There are generally several avenues open to the civil litigant to acquire the sought after information, of which subpoenaing newsmen is but one. Accordingly, the Court concludes that in civil litigation, the First Amendment requires that newsmen be given a privilege against revealing their confidential sources that may be abrogated only by a showing on the part of the moving party that his only practical access to crucial information necessary for the development of the case is through the newsman's sources. For example, in meritorious libel actions, in which the issue of the case was the truth of what had been published by a defendant reporter, a reporter may have to reveal his source of the information because such a disclosure may go to the "heart of the plaintiff's claim." See *Carey v. Hume,* 160 U.S.App.D.C. 365, 492 F.2d 631 (1974); *Garland v. Torre,* 259 F.2d 545 (2d Cir. 1958).

█ No showing has been made in this case that Nationwide reporters' confidential source information is crucial to the development of Allied's case, nor that such information is not practically accessible through other channels. Accordingly, that portion

of Nationwide's motion to quash which disputes Allied's subpoena as it requires its reporters to reveal confidential news sources will be granted.

The subpoena additionally asks Nationwide to produce, from the unpublished files of its stations, material that is not confidential—that is, material that was not proffered only upon the assurance that its source, or upon the assurance that the material would not be later revealed. This material includes information from other media sources, including press clippings, UPI wire service copy, press releases, and information from other general sources, books, journals, and documents, Also included are unedited draft scripts and "outcuts"—soundtrack and film not broadcast, and reporters' notes from sources not concerned with confidentiality. With respect to these files, Nationwide contends that this disclosure will (1) expose a reporter's slant on a story, perhaps leading to information received from a confidential source, (2) amount to a deprivation of property without due process of law, and (3) be unreasonably burdensome.

There is in the Court's view, no basis in the First Amendment for a privilege relating to a reporter's or editorialist's slant on a news story or editorial. Only if material requested directly leads to the disclosure of confidences does the privilege attach. Vague allegations of potential indication of confidential sources will not suffice. Furthermore, Nationwide's position that a disclosure of the non-confidential unpublished files would violate the Fourteenth Amendment is also without merit. Nationwide contends that it has a property right in its unpublished files as a compiler of materials, and revealing those files would destroy their value. It is asserted that others could appropriate the fruits of the reporter's efforts, and even his thought processes as reflected in the selection of the materials compiled, if the general public and other media forms are given access to these files. Opening these files to discovery does not necessarily open them to the public, however. The Court has the power as well as the duty to fashion protective orders that enable the movant to secure the needed information at a minimum of public exposure to the subject of the subpoena, and to condition the discovery on reasonable payment for the services rendered. Fed.R. Civ.P. 26(c). Cf. *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405 (N.D.N.Y.1973); *International Nickel Company v. Ford Motor Company*, 15 F.R.D. 392 (S.D.N.Y.1954).

Finally, Nationwide argues that the separation of the confidential and the non-confidential records will be unreasonably burdensome and time-consuming. The Court concludes otherwise, however. Only eight total files are requested, and several of these appear to be fairly uniform in their contents. Requiring WLEE and WXEX–TV to perform a quick purview of the documents in those files to ascertain whether they contain confidential information does not in the Court's view appear to be unreasonable.

An appropriate order will issue.

## ORDER

For the reasons stated in the memorandum this day filed, and deeming it proper so to do, it is ADJUDGED and ORDERED that Nationwide Communications, Inc.'s motion to quash the subpoena to take depositions and to produce documents be, and the same is hereby granted in part and denied in part.

It is further ORDERED that with respect to those files and documents that are discoverable, only Allied attorneys will be permitted to inspect the materials and/or question Nationwide officials on the materials, and said attorneys are prohibited from revealing the results of their discovery to anyone other than the Court and counsel for the respective parties. All counsel are prohibited from revealing any information so gained. All documents secured as a part of the record or depositions taken on those documents under said subpoena will be sealed, and are not to be opened except by

order of the Court. Additionally, Nationwide, if it seeks financial reimbursement for expenses incurred in complying with plaintiffs' request, shall within fifteen (15) days of this date submit to the Court an itemized statement of any such claim.