**GULLIVER'S PERIODICALS, LTD., et al., Plaintiffs,**

v.

**CHAS. LEVY CIRCULATING COMPANY, INC., et al., Defendants.**

**No. 77 C 547.**

United States District Court, N. D. Illinois, E. D.

Sept. 7, 1978.

George W. Hamman, Jill Nickerson, Chicago, Ill., Marvin N. Benn, Chicago, Ill., for plaintiffs.

Keith C. McDole, Don H. Reuben, Thomas F. Ging, Kirkland & Ellis, Chicago, Ill., for Newsweek, Inc. and Time, Inc.

Roger B. Harris, Susan Henderson, Altheimer & Gray, Chicago, Ill., for Kable News and Curtis Circulating Co.

John M. Hadlock, Whitman & Ransom, New York City, Wilbur H. Boies, McDermott, Will & Emery, Chicago, Ill., for Select Magazines and Ziff-Davis Pub. Co.

Frederic J. Artwick, Sidley & Austin, Chicago, Ill., for Fawcett Pub. Co.

Earl E. Pollock, Sonnenschein, Carlin, Nath & Rosenthal, Duane C. Quaini, Chicago, Ill., for Chas. Levy Circulating Co.

Bergstrom, Davis & Teeple, Chicago, Ill., for Independent News.

Isham, Lincoln & Beale, David M. Spector, Chicago, Ill., for The New York Times Co.

David W. Andich, Roan & Grossman, Chicago, Ill., for The Chicago Reader, Inc.

## MEMORANDUM

LEIGHTON, District Judge.

This private antitrust suit has generated a discovery controversy between the lead defendant, the Chas. Levy Circulating Company, Inc., and the Chicago *Reader*, a newspaper publisher, along with two of its contributing reporters concerning a deposition at which the reporters will be questioned about their sources for an article they wrote for the publisher. The publisher and the reporters have moved to quash the deposition subpoenas on the ground that the information sought is irrelevant and immaterial; but more importantly, that the publisher and the reporters are protected by the first amendment to the United States Constitution from revealing the sources and source material on which they relied in writing and publishing the article. This court concludes that even if the information sought is relevant and material to this case, the publisher and its reporters are constitutionally protected from being subjected to a deposition at which they will be required to answer questions concerning sources on which they relied in writing and publishing the article in question. Accordingly, the deposition subpoenas as served are quashed; and the depositions as sought to be taken are barred.

### I.

Gulliver's Periodicals, Ltd. is an Illinois corporation engaged in the business of distributing magazines and newspapers. Bob's New Emporium, Inc. is a retailer of magazines and newspapers. Both corporations are wholly owned and controlled by Robert Katzman who is a distributor of periodicals. The corporations are plaintiffs in this suit in which it is alleged that defendants, all of them national distributors and publishers, are violating Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, by engaging in a conspiracy and combination in which they have agreed to deal only with Chas. Levy Circulating Co., a principal distributor of magazines and newspapers in the greater metropolitan area of Chicago. Thus, it is charged that defendants have conspired to eliminate Gulliver's as a competitor of Levy. As a consequence of this conspiracy, plaintiffs allege that Bob's Emporium is compelled to pay a substantially higher price for the magazines and newspaper it retails.

On June 3, 1977, the *Reader*, a Chicago weekly newspaper, published an article entitled "A Newsboy's Improbable Dream" written by two contributing reporters, David Martin and Michael VerMeulen, describing Robert Katzman's difficulties in the operation of his distributorship. The article was liberally laced with quotes and comments concerning the history of the Chas. Levy operation, its alleged domination of the periodical distribution business in the Chicago area, Katzman's claimed difficulties with Levy, and this pending suit. Chas. Levy took a deposition of Katzman who, when questioned about the article, stated that portions of it were erroneous.

Shortly after discovering this information from Katzman, Chas. Levy, pursuant to Rules 30 and 45, Fed.R.Civ.P., served third party deposition notices on the company that published the *Reader* and on the authors of the article. The subpoena served on the publisher required production of

[a]ll documents in your . . . possession, custody or control which constitute,

relate or refer to any interview, conversation, communication or other contact with Robert Katzman in the preparation of or otherwise concerning an article headlined "A Newsboy's Improbable Dream", bearing the by-line "By David Martin and Michael VerMeulen", and appearing on pages 1, and 18–23 of the *Reader* of Friday, June 3, 1977, Volume 6, No. 35, published by Chicago Reader, Inc., 12 East Grand Avenue, Chicago, Illinois, 60611, including, but not limited to notes, memoranda and mechanical or electronic recordings.

The subpoenas served on the authors of the article required production of

[a]ll documents in your . . . possession, custody or control which constitute, relate or refer to any interview, conversation, communication or other contact with Robert Katzman in the preparation of or otherwise concerning an article headlined "A Newsboy's Improbable Dream", bearing the by-line "By David Martin and Michael VerMeulen", and appearing on pages 1 and 18–23 of the *Reader* of Friday, June 3, 1977, Volume 6, No. 35, published by Chicago Reader, Inc., 12 East Grand Avenue, Chicago, Illinois 60611, including, but not limited to notes, memoranda and mechanical or electronic recordings.

## II.

These are the notices of depositions against which the publisher and the two reporters seek a protective order; and these are the subpoenas which they have moved to quash. They argue that the information and documents sought by Chas. Levy are not relevant to its defenses, nor are they relevant to its counterclaim which is based on an article that was published in the *Maroon*, not in the *Reader*; that the subpoenas infringe their confidential relation with their news source, Robert Katzman; that they have a First Amendment privilege of non-disclosure of news sources which would be violated if they were to comply with the notices and subpoenas; and that the Illinois Reporter's Privilege Statute, Ill.Rev.Stat., ch. 51, §§ 111, *et seq.* (1975), protects them from compelled disclosure of the information sought.

Chas. Levy counters these arguments with the contentions that the materials it seeks to obtain, and the information about them, are relevant to the allegations of its counterclaim against the plaintiffs in this suit; that there is no First Amendment reporter's privilege against disclosure of confidential relations with news sources; and that the state statute on which the publisher and the reporters rely does not govern disposition of these motions because this suit is pending in a federal court where issues of this kind are controlled by the Federal Rules of Evidence.

## III.

■ From the outset, this court rejects the notion that Illinois law governs the disposition of these motions. In federal question cases and cases where federal law governs, the clear weight of authority supports reference to federal law on the existence and scope of a privilege. Rule 501, Federal Rules of Evidence; *Lewis v. United States*, 517 F.2d 236, 237 (9th Cir. 1975). However, where, as in this case, there is no controlling federal statute on the asserted privilege, the district court for its guidance may consider existing state law concerning the privilege. *Baker v. F & F Investment*, 470 F.2d 778, 781–82 (2d Cir. 1972), *cert. denied*, 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973).

By its Illinois Reporter's Privilege Act, Illinois law provides:

No court may compel any person to disclose the source of any information obtained by a reporter during the course of his employment except as provided in this Act. The privilege conferred by this Act is not available in any libel or slander action in which a reporter or news medium is a party defendant. Ill.Rev.Stat. ch. 51, § 111 (1975).[1]

1. Many other states have statutes similar to that provided by Illinois law. 8 *Wigmore on Evidence* § 2286 (McNaughton rev. ed. Supp.

1977); Note, 36 Va.L.Rev. 61 n.1 (1950). This proliferation of privileges has been criticized: Privilege paints with a broad brush. Recon-

A "source" is defined to include and encompass "the person or means from or through which the news or information was obtained." Ill.Rev.Stat. ch. 51, § 112(c) (1975). Illinois law provides that the party seeking to divest a reporter of his privilege of non-disclosure must apply to the circuit court where the action is proceeding for an order of divestiture. Ill.Rev.Stat. ch. 51, § 113 (1975). In proceeding on such an application the circuit court should consider,

> the nature of the proceedings, the merits of the claim or defense, the adequacy of the remedy otherwise available, if any, the relevancy of the source, and the possibility of establishing by other means that which it is alleged the source requested will tend to prove. Ill.Rev.Stat. ch. 51, § 116 (1975).

This court has examined the statute, but concludes that it does not control disposition of the motions in this case. This conclusion requires the court to determine the law which does govern them.

The controversy presented by these motions is a clash between public and private interest in compelled testimony; it involves the duty to give testimony,[2] and the public interest in the non-disclosure of a journalist's confidential sources. *See Baker v. F & F Investment*, 470 F.2d at 782–83; Note, *Reporters and Their Sources: The Constitutional Right to a Confidential Relationship*, 80 Yale L.J. 317 (1970). Courts have recognized that in the process of gathering information, a reporter sometimes makes assurances that either the source of his information will not be disclosed or that only some of the information acquired will be published. If these assurances are broken, potential sources of information will be reluctant to come forward and "[i]nformation lost to the press is information lost to the public; unnecessary impediments to a newsman's ability to gather facts, follow leads, and assimilate sources can restrict the quality of our news as effectively as censorship activities." *Gilbert v. Allied Chemical Corp.*, 411 F.Supp. 505, 508 (E.D.Va.1976). Thus, courts have fashioned a testimonial privilege which inures to the benefits of news gatherers and enhances the free flow of information to the public at large. The case law in this area is somewhat ambiguous, but reference to *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) is an appropriate beginning.

In *Branzburg* the court declared that newsmen must respond to grand jury subpoenas to answer questions which are relevant to its investigation into the commission of a crime, even if, in the process of responding, confidential sources are disclosed. It was held that there was no First Amendment newsman's privilege not to respond to a grand jury subpoena, stating that "the Constitution does not, as it never has, exempt the newsman from performing the citizen's normal duty of appearing and furnishing information relevant to the grand jury's task." *Id.* at 691, 92 S.Ct. at 2661.

*Branzburg*, however, is readily distinguishable from the case at bar because there the integrity of the grand jury process was at stake; therefore, it is not dispositive of the claims raised in these motions. But the decision, particularly the concurring opinion of Mr. Justice Powell, highlights the approach to be taken by a court in assessing a reporter's claim of privilege.

ciling interests in privacy and confidentiality with the needs of litigants is not readily achieved in terms of broad categories; it calls for a finer touch of the specific solution. A tool already at hand, though perhaps largely unrecognized, consists of recognizing standing on the part of the possessor of information to question the legitimacy of need for it in litigation, i. e. to raise issues of relevancy in the broad sense. McCormick on Evidence § 77 at 159 (2d. ed. 1972) (footnote omitted).

2. In *Blackmer v. United States*, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932), Mr. Chief Justice Hughes stated, "It is . . . beyond controversy that one of the duties which the citizen owes to his government is to support the administration of justice by attending its courts and giving his testimony whenever he is properly summoned." Id. at 438, 52 S.Ct. at 255.

The asserted claim . . . should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony . . . .. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional ways of adjudicating such questions. *Branzburg v. Hayes*, 408 U.S. at 710, 92 S.Ct. at 2671. (footnotes omitted.)

Moreover, the *Branzburg* case, as well as others, suggests a proposition that this court readily embraces: that the news gathering process qualifies for First Amendment protection.[3] *See Branzburg v. Hayes*, 408 U.S. at 681–82, 92 S.Ct. 2646 (1972); *Baker v. F & F Investment*, 470 F.2d at 782–83; *Garland v. Torre*, 259 F.2d 545, 548 (2d Cir.), *cert. denied*, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958); *Loadholtz v. Fields*, 389 F.Supp. 1299, 1300–01 (M.D.Fla.1975); *People v. Dohrn*, 69–3808 (June 12, 1970, Circuit Court of Cook County Criminal Division). An examination of cases which hold that compelled disclosure of confidential sources may involve infringement of First Amendment freedoms reveals a number of guidelines, some conceptually related, which assist any adjudication of the claim of privilege.

■ First, the compelled disclosure of a news source or source material places a restraint on the news gathering process, implicates and involves an infringement on freedom of the press. Disclosure of a news source should not be ordered absent some strong and compelling reason in favor of disclosure. In *Baker v. F & F Investment, supra*, plaintiffs filed a class action suit based on charges of racial discrimination in the sale of housing to blacks in Chicago, Illinois. An article dealing with blockbusting in Chicago and based on an interview with an anonymous Chicago-area real estate agent became the subject matter of a discovery dispute in New York. Plaintiffs questioned the author of the article about his anonymous news source. The author vouched for the accuracy of the article generally, but refused to identify his confidential source on the ground, that the first amendment protected his right to gather information, and that this right protected him from disclosing the identity of his news source. Plaintiffs filed a motion pursuant to Rule 37, Fed.R.Civ.P. to compel the author to identify his source, but the district court denied the motion, balancing the competing public and private interests involved in the case. On appeal, the Second Circuit affirmed, concluding that the district court did not abuse its discretion in entering the challenged order. The decision indicates that the news gathering process qualifies for constitutional protection, since the disclosure of a news source may involve an indirect and subtle restraint on the exercise of first amendment freedoms. *Baker v. F & F Investment*, 470 F.2d at 785. Because freedom of press is implicated, disclosure of confidential sources should not be ordered absent a showing, bordering on a compelling reason, in favor of such disclosure.

While we recognize that there are cases—few in number to be sure—where First Amendment rights must yield, we are still mindful of the preferred position which the First Amendment occupies in the pantheon of freedoms. Accordingly, though a journalist's right to protect confidential sources may not take precedence over that rare overriding and compelling interest, we are of the view that there are circumstances, at the very least in civil cases, in which the public interest in non-disclosure of a journalist's confidential sources outweighs the public and private interest in compelled testimony. *Baker v. F & F Investment*, 470 F.2d at 783.

■ Second, in assessing a news gatherer's claim of privilege and in balancing the competing interests involved, a court should consider: the nature of the case at bar; the relevance and materiality of the information sought to be adduced; whether the information sought goes to the heart of, is

---

3. In *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977), the court found that the existence of a newspaperman's privilege is no longer in doubt.

crucial to, the claims made by the discovering party and the issues framed by the pleadings; and the availability of the information from other sources.[4] If disclosure is ordered, it should be kept to a minimum and should be made only insofar as it is pertinent and necessary to the case of the discovering party. "[D]isclosure in the course of a 'fishing expedition', is ruled out in [a] First Amendment case." *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977).

These principles are highlighted in *Garland v. Torre*, 259 F.2d 545 (2d Cir. 1958). There, Judy Garland filed a suit for breach of contract and defamation against the Columbia Broadcasting System. The defamation claim was based in part on an article written by Marie Torre attributing allegedly defamatory statements to a CBS executive. Plaintiff deposed Marie Torre to ascertain the identity of the CBS executive, after trying unsuccessfully to secure the identity of the executive by alternative means. Counsel for Marie Torre sought a court order prohibiting plaintiff from inquiring into the identity of the executive. The district court denied the requested relief and held Torre in criminal contempt after she persisted in her claim that the executive's name need not be disclosed. On appeal Torre offered three arguments in favor of reversing the district court's decision: that she had a constitutional right not to disclose the identity of her news source; that there was a societal interest, apart from a constitutional interest, in assuring the free flow of information which would be impeded if a confidential news source had to be identified; and that the district court in the exercise of its discretion should have declined to compel disclosure. Judge Stewart, writing for the Court, said:

> As to the Constitutional issue, we accept at the outset the hypothesis that compulsory disclosure of a journalist's confidential sources of information may entail an

abridgment of press freedom by imposing some limitation upon the availability of news.

> But freedom of the press, precious and vital though it is to a free society, is not an absolute. What must be determined is whether the interest to be served by compelling the testimony of the witness in the present case justifies some impairment of the First Amendment freedom. That kind of determination often presents a 'delicate and difficult' task. 259 F.2d at 548.

He then proceeded to balance the competing interests and affirmed the district court, noting that the identity of the news source went to the heart of plaintiff's claim; that alternative sources had been exhausted; that the information sought was not of doubtful relevance or materiality; and that disclosure was a necessary step in plaintiff's due and proper preparation for trial. 259 F.2d 549–50.

■ Third, the mere fact that the source of an article is known is irrelevant to the disposition of a claim that the underlying materials need not be produced. In *Loadholtz v. Fields*, 389 F.Supp. 1299 (M.D.Fla. 1975), a party plaintiff served a reporter with a subpoena to testify at a deposition and produce documents concerning an article which attributed various statements to a defendant in the case. The reporter refused to comply with the document request and answer questions about the statements. Plaintiff then filed a motion to compel discovery. The court denied the motion, holding that requiring the reporter to attend a deposition and produce published as well as unpublished documents received by him in the course of his duties had a chilling effect on the flow of information to the public at large in violation of the First Amendment. The court concluded

> that the paramount interest served by the unrestricted flow of public informa-

---

4. In *Carey v. Hume*, 160 U.S.App.D.C. 365, 492 F.2d 631, *cert. dismissed*, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974), the court stated:

> The courts must always be alert to the possibilities of limiting impingements upon

press freedom to the minimum; and one way of doing so is to make compelled disclosure by a journalist a last resort after pursuit of other opportunities has failed. Id. 160 U.S. App.D.C. at 373, 492 F.2d at 639.

tion protected by the First Amendment outweighs the subordinate interest served by the liberal discovery provisions embodied in the Federal Rules of Civil Procedure. *Id.* at 1300.

In addressing the plaintiff's contention that no confidential source was involved in the case since the defendant was quoted as the news source, the court stated that

[t]his distinction is utterly irrelevant to the 'chilling effect' that the enforcement of these subpoenas would have on the flow of information to the press and to the public. The compelled production of a reporter's resource materials is equally as invidious as the compelled disclosure of his confidential informants. *Id.* at 1303.

■ Fourth, and finally, under the preferred approach, disclosure of material given by the news source to the news gatherer should be studied to ascertain if the material sought to be adduced was proffered on the assurance that either the source or the material itself would not later be revealed. See *Gilbert v. Allied Chemical Corp.*, 411 F.Supp. 505 (E.D.Va.1976). This, the court has done; and, being mindful of the solicitude to be given First Amendment freedoms, has concluded that compelled wholesale disclosure of a reporter's confidential sources or material divulged in confidence involves and implicates infringements of First Amendment rights.

■ In this case, Chas. Levy essentially seeks to discover if the statements attributed to Mr. Katzman in the Chicago *Reader* article are accurate. Mr. Katzman has already disavowed making some of the statements during the course of a lengthy deposition; and it would appear that there is no compelling need to carry this line of inquiry further to resolve this conflict. Chas. Levy however, argues that the material sought is directly related and relevant to its trade libel counterclaim and defense to plaintiff's case-in-chief. The court has examined the trade libel claim; it is obviously predicated in large part on an article appearing in the Chicago *Maroon*, not the Chicago *Reader*. On the basis of the record now before the court, and the representations heretofore made by the parties, it appears that the material underlying the article and the article itself, outside of its intrinsic entertainment value, do not provide a source of crucial information going to the heart of the counterclaim. Therefore, due to the presently ill-defined nature of the depositions of David Martin, Michael VerMeulen, and the *Reader*, and the danger they pose to First Amendment freedoms, the court orders that the subpoenas, as served on movants, be quashed and that Chas. Levy be barred from conducting the depositions as proposed.

So ordered.