**Carl Thomas STICKELS, Plaintiff,**

**v.**

**GENERAL RENTAL CO., INC. and Taylor Rental Corporation and Simon Aerials, Inc., Defendants.**

**Civ. A. No. 90–00263–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 9, 1990.

Stephen E. Noona, Stephen E. Story, Kaufman & Canoles, Norfolk, Va., for Daily Press.

Patricia Maria Powis, James Winston Tredway III, Paul Greenwood Turner III, Christian, Barton, Epps, Brent & Chappe, Richmond, Va., Tyler Edward Williams III, Tyler B. Baker, Baker, Williams & Green, Keysville, Va., for Carl Thomas Stickels.

Thomas Crawford Palmer Jr., Brault, Palmer, Grove & Zimmerman, Manassas, Va., for General Rental Co., Inc. and Taylor Rental Corp.

Robert Edwin Thackston, James Hubert Price III, McGuire, Woods, Battle & Booth, Richmond, Va., for Simon Aerials, Inc.

Leisa J. Hamm, Lord, Bissell & Brook, Chicago, Ill.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on the motion of The Daily Press, Inc. ("The Daily Press"), not a party to the above action, to quash a subpoena *duces tecum* served upon it by the defendant, General Rental Co., Inc. It has been fully briefed and argued, and is ripe for disposition.

This lawsuit is the result of an accident which occurred on February 14, 1989, at the Fort Magruder Inn and Conference Center in James City County, Virginia, when a man lift overturned, causing the plaintiff, Carl Thomas Stickels, to be injured and a co-worker to be killed. Plaintiff is a citizen of the Commonwealth of Virginia. Defendant Simon Aerials, Inc., is a Wisconsin corporation, with its principal place of business in Wisconsin. It manufactures aerial lift equipment. Defendant General Rental Co., Inc. ("General") is a Florida corporation with its principal office in New Britain, Connecticut. General is engaged in the business of renting equipment and, as part of that business, it owns and/or operates a Taylor Rental Center store located in Hampton, Virginia. Defendant Taylor Rental Corp. is a Delaware corporation with its principal place of business in New Britain, Connecticut. Taylor is the parent corporation of General. The matter in controversy for each plaintiff, exclusive of interest and cost, exceeds the sum of Fifty Thousand Dollars ($50,000.00). Jurisdiction over the action is conferred by virtue of the diversity statute, 28 U.S.C. § 1332(a).

In this tort action, one of the primary issues at trial will be the manner in which the manlift was being used at the time of the accident. Of particular significance is whether, at the time of the accident, four stabilizers or "outriggers" were properly in place. Along with various medical person-

nel and other witnesses, a reporter for The Daily Press was present at the scene soon after the accident. While there he took several photographs, only some of which were later printed in newspapers. These printed photos were made available, upon a subpoena *duces tecum*, to defendant General. The Daily Press refused, however, to provide the defendant with copies of the unprinted photographs. Rather, it brought this motion to quash that part of the subpoena which would require them to produce any photos or negatives which were not published. *See* Fed.R.Civ.P. 26(b); 45(b). The Daily Press strenuously asserts that its unpublished photos are privileged. It argues that the First Amendment of the United States Constitution and Article I, Section 12, of the Virginia Constitution,[1] afford a newspaper reporter a qualified privilege against testifying to the facts or producing materials learned or obtained in the course of newsgathering activities, whether these facts or materials are confidential or not.[2]

### DISCUSSION

■ As an initial matter, this Court reaffirms its commitment to a free and uninhibited press contributing to the robust and unfettered debate characteristic of our society. At the same time, this Court is aware that a generation of Supreme Court jurisprudence suggests that the First Amendment does not provide the press with an absolute shield from legal process. *See, e.g., Herbert v. Lando,* 441 U.S. 153, 165, 99 S.Ct. 1635, 1643, 60 L.Ed.2d 115 (1979) (evidentiary rules "are applicable to the press and other defendants alike"); *Branzburg v. Hayes,* 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972) (press has no special constitutional immunity from giving grand jury testimony). Nevertheless, an overwhelming number of lower courts, including this court and the Fourth Circuit, have recognized a newsperson's privilege from revealing their confidential

news sources in civil proceedings. *See von Bulow (By Auersperg) v. von Bulow,* 811 F.2d 136, 142–44 (2d Cir.1987), *cert. denied, Reynolds v. von Bulow,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *LaRouche v. National Broadcasting Co., Inc.,* 780 F.2d 1134, 1139 (4th Cir.1986); *Zerilli v. Smith,* 656 F.2d 705, 710–15 (D.C. Cir.1981); *Miller v. Transamerican Press, Inc.,* 621 F.2d 721, 724–27 (5th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981); *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 594–99 (1st Cir.1980); *Riley v. City of Chester,* 612 F.2d 708, 714–18 (3d Cir.1979); *Gilbert v. Allied Chemical Corp.,* 411 F.Supp. 505 (E.D.Va.1976). This privilege, which is drawn from the discussion in *Branzburg v. Hayes,* 408 U.S. 665, 710, 92 S.Ct. 2646, 2671–72, 33 L.Ed.2d 626 (1972), and particularly from the concurring opinion of Justice Powell, requires the district court to undergo a balancing of interests. *LaRouche v. National Broadcasting Co., Inc.,* 780 F.2d 1134, 1139 (4th Cir.1986). To address the relevant interests, courts have developed a three part test: (1) whether the information sought is relevant to the proceeding; (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information which overcomes the burden to the press. *Id.; Miller v. Transamerican Press, Inc.,* 621 F.2d 721, *modified,* 628 F.2d 932 (5th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981); *see also, Brown v. Commonwealth,* 214 Va. 755, 204 S.E.2d 429, *cert. denied,* 419 U.S. 966, 95 S.Ct. 229, 42 L.Ed.2d 182 (1974).

■ A number of the courts which have recognize this qualified privilege have applied it to nonconfidential, as well as confidential, sources and information. *See, e.g., von Bulow (By Auersperg) v. von Bulow,* 811 F.2d 136, 142–44 (2d Cir.), *cert. denied,*

---

**1.** Although The Daily Press contends that the Virginia Constitution also provided a qualified privilege, they do not assert that the Virginia Constitution provides greater protection than the First Amendment of the United States Constitution. *See The Daily Press Memorandum in Support of Motion to Quash* at 4, n. 1. Therefore this Court shall address itself to the First Amendment.

**2.** The Daily Press has admitted that the photographs sought are not "confidential."

*Reynolds v. von Bulow*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *United States v. Blanton*, 534 F.Supp. 295, 296–97 (S.D.Fla.1982), *aff'd*, 730 F.2d 1425 (11th Cir.1984). It is generally the opinion of these courts that the potential burden on the free flow of information caused by the disclosure of nonconfidential material is equivalent to the burden of revealing confidential information. *See, e.g., United States v. Blanton*, 534 F.Supp. 295, 296–97 (S.D.Fla.1982), *aff'd*, 730 F.2d 1425 (11th Cir.1984) (nonconfidentiality of source of information is "irrelevant to chilling effect"). This Court had occassion to address this issue in *Gilbert v. Allied Chemical Corp.*, 411 F.Supp. 505, 511 (E.D.Va. 1976), where the subpoena in question requested nonconfidential, unpublished information including press clippings, UPI wire service copy, press releases, and information from other sources such as books and journals. This Court was of the opinion that "[o]nly if material requested directly leads to the disclosure of confidences does the privilege attach." *Id.* However, in a subsequent *en banc* opinion, a majority of the Fourth Circuit noted its approval of a "balancing of interests" test to determine whether reporters could be compelled to testify as to nonconfidential information. *United States v. Steelhammer*, 561 F.2d 539, 540 (4th Cir.1977) (en banc) (relying on the reasoning of *United States v. Steelhammer*, 539 F.2d 373, 376–78 (4th Cir. 1976) (Winter, J., dissenting)). Therefore, to the extent that this Court's decision in *Gilbert* conflicts with *Steelhammer*, the approach of *Gilbert* is abandoned and a qualified privilege for nonconfidential information and materials acquired by the press in the course of their newsgathering process, is adopted.

█ The question still remains whether the materials sought in the instant case, unpublished photos and negatives of an accident scene taken by a reporter, are protected by the qualified privilege. Having balanced the competing interests present, this court is of the opinion that they are not privileged. Looking at the interests enunciated in the accepted tripartite test, the documents sought are clearly relevant to the case; the appearance and location of the man lift immediately after the accident may provide important information concerning the way it was being used at the time of the accident. This may prove critical in defendants' attempt to establish contributory negligence. In fact The Daily Press informs the Court that it has already given General the opportunity to look at the photos in question in order to decide whether they should pursue the subpoena. And, after analyzing them, General still believes that these photos would provide additional, material evidence for their case. This suggests that there are no reasonable alternative means available to General to obtain the specific information requested. The Daily Press argues that the information which is of concern to General could be obtained through the testimony of the various medical personnel and other bystanders present. While there is certainly the possibility that witnesses to the accident might provide some insight into the circumstances surrounding the accident, this Court is not blind to the unique nature of photographs. They provide detailed and unusually credible evidence, beyond that possible by even the most reliable testimony. Furthermore, given the atmosphere which must have prevailed in the immediate aftermath of the accident, it is unlikely that any witness would have paid much attention to the specifics regarding the location and construction of the man lift. Nor is it sufficient that General has also been provided with those photographs which were actually published. Both parties apparently agree that the unpublished photos portray the accident scene from a different angle than those published; they are clearly not cumulative.

Of final consideration is whether General's interest in obtaining the photos outweighs the burden on the first amendment interests protected by the privilege. This Court is hard-pressed to find any significant burden resulting from the compelled disclosure of these photos. Because there is no confidentiality at stake, the only burden on The Daily Press would be administrative. This, however, is slight. The sub-

poenaed photos have already been identified and the negatives printed. No additional time will have to be spent by The Daily Press in preparing them. Also, it seems likely that the parties will agree to a stipulation regarding the authenticity of the photographs, thereby reducing the in-court time required of the reporter.

In evaluating the first amendment burden, the Court finds further support in *Steelhammer,* in which "the absence of a claim of confidentiality [helps] tip the scale" in favor of disclosure. *United States v. Steelhammer,* 539 F.2d 373, 376 (4th Cir.1976) (Winter, J., dissenting), *cited with approval in* 561 F.2d 539, 540 (4th Cir.1977) (en banc). Although this Court has recognized a qualified privilege for nonconfidential materials, the fact that these particular photos merely preserve images that were so much part of the public domain, must weigh heavily in favor of compelling their disclosure.

## CONCLUSION

A motion to compel discovery is addressed to the sound discretion of this court even when the object of the discovery is protected by a journalist's qualified privilege. *LaRouche v. National Broadcasting Co., Inc.,* 780 F.2d 1134, 1139 (4th Cir.1986). Having balanced the appropriate burdens, the Court finds that the balance is in favor of requiring disclosure of the unpublished photos. Consequently, the motion of The Daily Press to quash the subpoena will be DENIED.

An appropriate Order shall issue.