WILKINSON, Circuit Judge,
concurring separately:
I concur in the judgment of the court, but I cannot embrace its reasoning. Government subpoenas of news reporters inevitably involve tensions between the needs of law enforcement and those of newsgather-ing. The majority responds to these tensions by discounting any privilege on the part of reporters in the absence of governmental bad faith. I fear this is a one-dimensional look at a two-dimensional problem.
There are two interests at stake in these sorts of cases. That is why courts traditionally have balanced the competing interests of press and prosecution in ruling on a reporter’s motion to quash. Branzburg v. Hayes, 408 U.S. 665, 710-11, 92 S.Ct. 2646, 2670-86, 33 L.Ed.2d 626 (1972) (Powell, J., concurring). The majority implies, however, that the interest of the newsgatherer amounts to no more than an interest in remaining free from state harassment. Because a subpoena can rarely be challenged successfully on that basis, I submit that the reportorial interest, as defined by the majority, is not much of an interest at all.
In LaRouche v. National Broadcasting Co., 780 F.2d 1134 (4th Cir.1986), this circuit adopted a balancing approach to uphold a journalist’s privilege in a civil case involving confidential information. The specific factors fo be assessed in balancing the competing interests were (1) whether the information sought was relevant; (2) whether the information could be obtained by alternative means; and (3) whether there was a compelling government interest in the information. Id. at 1139. The balancing test has been applied within this circuit to situations involving nonconfiden-tial materials. Stickels v. General Rental Co., 750 F.Supp. 729, 731-32 (E.D.Va.1990) (discussing cases). Other courts have applied the balancing test in the context of a criminal prosecution. See, e.g., United States v. Caporale, 806 F.2d 1487, 1504 (11th Cir.1986); United States v. Burke, 700 F.2d 70, 77 (2d Cir.1983) (listing cases). Indeed the very passage quoted by the majority from Branzburg suggests that a trial court must appraise the competing interests in a criminal case. Majority at 853.
The facts in this case help to illustrate why. These reporters were neither parties nor witnesses to any criminal activity. They have been subpoenaed for doing nothing more than effectively covering the news. All four reporters have covered for extended periods the scandal which led to this trial, yet they are now unable to cover the trial because they reported “false exculpatory statements” made by the defendant, Senator Long.* Using the power of subpoena to remove reporters with a special background on a story is a troubling matter. It will not enhance the public’s understanding of events, and it may re *855 strain the flow of information in a way that ordinary subpoenas do not.
The situation here is not atypical. In an attempt to achieve vindication or to turn public opinion in their favor, those suspected of wrongdoing will often seek to get out their side of the story through the media. Denials of misconduct, honest and otherwise, will be commonplace. In routinely reporting such denials, the press acts in its own way to protect the presumption of innocence. Now, however, every reporter who reports a putative defendant’s false exculpatory statement is a potential witness at trial. That potential increases markedly when the statement was not made at a news conference, but to the reporter individually. Reporters facing the prospect of becoming prosecution witnesses if they report a false exculpatory statement may think twice about conducting exclusive interviews or reporting statements of denial that may be open to question. I am troubled by any rule which says that a reporter’s exclusive “scoop” of a public figure’s version of events makes that same reporter uniquely vulnerable to a government subpoena. The values served by an independent press will be diminished if reporters covering a case are routinely dragged into its midst.
I agree that the government also has legitimate interests in this case. The testimony sought to be compelled obviously serves to rebut the defendant’s claim that the monies he received were in the nature of a campaign contribution. The defendant insisted to reporters on at least three different occasions that he received no more than $300 from Mr. Cobb, when in fact a videotape shows him accepting $2,800. This goes directly to the critical issue in a Hobbs Act case — whether there was an intentional use of public power for personal gain. Moreover, the reporters’ testimony would be brief; no confidential sources would be betrayed; and the evidence is apparently unobtainable through other means.
In a case where both sides can lay claim to legitimate interests, some deference is due the judgment of the district court— especially when the matter is incident to the conduct of a trial. These sorts of cases, however, present close and fact-sensitive questions as to which district court discretion can be meaningfully exercised in different ways. An appellate court should encourage the full articulation of the competing interests at stake when government seeks to compel the testimony of those whose job it is to gather and report the news. With respect, I believe the majority’s ruling sends a different signal — one that may get government into the habit of relying upon the testimony of reporters and one that sets a false balance in which the First Amendment interests in news-gathering have not been truly weighed.

 The fact that these reporters’ testimony was expected to be brief does not mean they were free to cover the remainder of the trial. There may be ethical constraints to covering a trial in which one has participated as a witness, and in this case, the defendant insisted that the reporters be sequestered until such time as they testified.