**Teresa A. PENLAND, Plaintiff,**

v.

**Charles H. LONG, Individually and in His Official Capacity as Sheriff of Buncombe County, Defendant.**

**J. Ronnie JACKSON, Plaintiff,**

v.

**Charles H. LONG, Individually and in His Official Capacity as Sheriff of Buncombe County, Defendant.**

**Nos. 1:94CV119, 1:94CV137.**

United States District Court,
W.D. North Carolina,
Asheville Division.

Dec. 19, 1995.

▮▮▮▮▮▮▮▮▮▮

---

**1.** The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

C. Frank Goldsmith, Jr., Goldsmith & Goldsmith, Marion, NC, for plaintiff Teresa A. Penland.

William A. Blancato, Bennett & Blancato, LLP, Winston–Salem, NC, for interested party North Carolina State Bureau of Investigation and defendant Charles H. Long.

Joseph P. McGuire, McGuire, Wood & Bissette, P.A., Asheville, NC, for respondent Glenn O'Neal, Multimedia Newspapers of North Carolina, Inc., Sherrill Barber, River City Broadcasting.

Sean P. Devereux, Whalen, Hay, Pitts, Hugenschmidt, Master & Devereux, Asheville, NC, for plaintiff J. Ronnie Jackson.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THESE MATTERS** are before the Court on the Plaintiffs' timely filed objections to the Memorandum and Recommendation of Chief United States Magistrate Judge J. Toliver Davis, filed September 12, 1995. Pursuant to 28 U.S.C. § 636 and standing orders of des-

ignation, this Court referred the motion of Respondent Sherrill Barber and River City Broadcasting, d/b/a WLOS–TV Station, to quash Plaintiff Penland's subpoena, and the motion of Respondent Glenn O'Neal and Multimedia Newspapers of North Carolina, Inc., d/b/a The Asheville Citizen–Times, to quash Plaintiff Penland's subpoena, to the Magistrate Judge for a recommendation as to disposition. For the reasons stated below, the recommended relief will be affirmed.

## I. STANDARD OF REVIEW

This Court reviews *de novo* those portions of the Memorandum and Recommendation to which objections have been filed. 28 U.S.C. § 636(b). The Plaintiffs have objected to the recommendation that Respondents O'Neal and Barber need not comply with Penland's subpoenas due to the application of a qualified journalists' privilege.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Both Plaintiffs Penland and Jackson have asserted claims against Long stemming from their dismissal by Long on August 5, 1993, after the alleged sexual abuse of an inmate in the Buncombe County Jail. Long issued a press release on the same date, the contents of which were published by the local media, including the *Asheville Citizen–Times* and WLOS–TV[1]. The Plaintiffs both asserted claims against Long for the deprivation of their federal and state constitutional due process interests, and for defamation under North Carolina law.

After the press release, Respondent O'Neal interviewed both Plaintiffs and Long. The several news articles written by O'Neal were published by the *Citizen–Times* from August 6, 1993, through October 15, 1994. On August 5, 1993, Respondent Barber investigated and prepared a news story regarding the firing of the Plaintiffs, which was

broadcast by WLOS–TV on that same date. According to Barber's affidavit, the initial source of his information regarding the events in the story was a confidential source.

On April 26, 1995, Penland subpoenaed both O'Neal and Barber, seeking the following information:

1. All notes, memoranda, drafts, and reports of all interviews with former Sheriff Charles H. Long and any interviews with any other person, including Teresa Penland and Ronnie Jackson, concerning the termination of the employment of Ms. Penland and Mr. Jackson by Sheriff Long or concerning any accusations against Ms. Penland or Mr. Jackson by [the alleged assault victim].

2. All correspondence, facsimile transmittals, messages, and other documents evidencing any communications between Sheriff Charles H. Long or members of his office and any employees of [the Respondents' respective employers] concerning the subjects mentioned in the foregoing paragraph.

Respondent O'Neal moved to quash his subpoena on May 22, 1995, and Respondent Barber moved to quash his subpoena on May 31, 1995. As the basis for their respective motions, both Respondents asserted the journalists' qualified privilege under the First Amendment of the United States Constitution.

## III. DISCUSSION

In the present case, Plaintiff Penland seeks information concerning the statements of Sheriff Charles H. Long to the respective journalists regarding the firing of the Plaintiffs, as well as the statements of the Plaintiffs to the journalists. Clearly, the identities of these sources are nonconfidential, and the record indicates that their respective statements were nonconfidential as well. There-

---

1. This press release stated the following: "As a result of an internal investigation by the Buncombe County Sheriff's Department, two detention officers have been dismissed from employment at the Buncombe County Detention Center. The investigation was ordered by Sheriff Charles H. Long after allegations were made of an alleged assault on an inmate in the custody of the Buncombe County jail. Sheriff Long has requested that the State Bureau of Investigation conduct an independent investigation into any possible criminal violation arising from this incident. Further information regarding this matter will not be released at this time, pending investigation."

fore, Penland's subpoenas clearly encompass nonconfidential information from nonconfidential sources. Due to the broad wording of the subpoenas, they could likely encompass confidential information from confidential sources as well.

As the parties' briefs indicate, the Fourth Circuit has not established a clear test for analyzing the protection afforded by the journalists' qualified privilege.

The first Fourth Circuit decision discussing the recognition of a journalists' qualified privilege under *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), is *United States v. Steelhammer,* 539 F.2d 373 (4th Cir.1976), *rev'd en banc,* 561 F.2d 539 (4th Cir.1977). In *Steelhammer,* the Fourth Circuit expressed hostility to the idea that journalists called as witnesses in civil cases might have a privilege to refuse to testify about all events they have observed in their professional capacity if other witnesses were available, and therefore suggested that a claim of confidentiality or evidence of vindictiveness was necessary for a journalist to invoke a testimonial privilege. *Steelhammer,* 539 F.2d at 376 (Winter, J., dissenting), *adopted by the court en banc,* 561 F.2d at 540. A contemporary decision noted that "[o]nly if material requested directly leads to the disclosure of confidences does the [journalists'] privilege attach." *Gilbert v. Allied Chemical Corp.,* 411 F.Supp. 505, 511 (E.D.Va.1976).

In a later decision, this qualified privilege was apparently extended to encompass not only confidential sources, but also nonconfidential information supplied by confidential sources. *Miller v. Mecklenburg County,* 602 F.Supp. 675, 679 (W.D.N.C.1985), *aff'd,* 813 F.2d 402 (4th Cir.1986), *cert. denied,* 479 U.S. 1100, 107 S.Ct. 1325, 94 L.Ed.2d 177 (1987).

In *LaRouche v. Nat'l Broadcasting Co., Inc.,* 780 F.2d 1134 (4th Cir.1986), *cert. denied,* 479 U.S. 818, 107 S.Ct. 79, 93 L.Ed.2d 34 (1986), the Fourth Circuit adopted the balancing test articulated in *Miller v. Transamerican Press, Inc.,* 621 F.2d 721, *modified,* 628 F.2d 932 (5th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981), for determining whether the journalists' privilege will protect a confidential source in a given situation. *LaRouche,* 780 F.2d at 1139. Under this test, a court must consider: (1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information. *Id.*

Nonetheless, in *Stickels v. General Rental Co., Inc.,* 750 F.Supp. 729 (E.D.Va.1990) (cited in *In re Shain,* 978 F.2d 850, 854 (4th Cir.1992) (Wilkinson, J., concurring)), the district court interpreted *Steelhammer* as requiring a "balancing of interests" test to determine whether reporters could be compelled to testify as to *nonconfidential* information. *Stickels,* 750 F.Supp. at 732 (emphasis added). Therefore, to the extent that *Gilbert's* prerequisite of confidentiality conflicted with this interpretation of *Steelhammer,* the approach of *Gilbert* was abandoned, and the court adopted a qualified privilege for nonconfidential information and materials acquired by the press in the course of their newsgathering process. *Id.*

However, in *In re Shain,* 978 F.2d 850 (4th Cir.1992), the majority opinion, relying upon *Steelhammer,* decided that the absence of confidentiality or vindictiveness fatally undermined the reporters' claim to a First Amendment privilege for nonconfidential information obtained from a nonconfidential source. *Id.,* at 853.

Finally, in *Church of Scientology Int'l v. Daniels,* 992 F.2d 1329 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 195, 126 L.Ed.2d 153 (1993), the Fourth Circuit addressed the efforts of the Church of Scientology to obtain from *USA Today* nonconfidential materials from a nonconfidential source. In this decision, the Fourth Circuit implied that such information was subject to the *LaRouche* balancing test, even though both the source and the materials were nonconfidential, and there was no suggestion of vindictiveness. *Id.,* at 1335. As pointed out by the Respondents, this approach is consistent with that taken by other circuit courts that have recently considered this issue. *See, e.g., Shoen v. Shoen,* 5 F.3d 1289, 1295 (9th Cir. 1993); *United States v. LaRouche Campaign,* 841 F.2d 1176, 1182 (1st Cir.1988).

■ In examining this precedent, the Court is persuaded by the logic of the concurring opinion in *Shain*, which is consistent with the result of *Church of Scientology*. These opinions suggest that the journalists' qualified privilege under the First Amendment encompasses nonconfidential information from nonconfidential sources, and that the *LaRouche* balancing test is to be applied in a civil case even in the absence of confidentiality or vindictiveness. Therefore, the Court will proceed to apply these factors in the instant case.

■ The first factor to be considered under *LaRouche* is the relevance of the information sought. *LaRouche*, 780 F.2d at 1139. It is undisputed that Sheriff Long issued the press release, and that while the release did not mention the Plaintiffs by name, their identities were already established. Therefore, there is no need for the Plaintiffs to attempt to prove via testimony by the Respondents that Sheriff Long was referring to the Plaintiffs when he issued the press release. Furthermore, it seems clear that Sheriff Long linked the release to the Plaintiffs, rather than the link being the product of some independent knowledge of the reporters. The Plaintiffs' state law defamation claim and constitutional claims accrued when they were terminated and the press release was issued, and any information provided to the media that was not publicized is of minimal relevance to these claims.

■ The second factor to be considered under *LaRouche* is whether the information sought can be obtained by alternative means. *Id.* While the Plaintiffs never explicitly asked Long if he had told Barber the names of the dismissed employees, and the Plaintiffs never deposed Joan Creasman, who may have overheard the information sought, the Court is satisfied that the information sought cannot reasonably be obtained by alternative means.

■ Finally, the third factor to be considered under *LaRouche* is whether there is a compelling interest in the information sought. *Id.* The Plaintiffs argue that they have a compelling interest in obtaining the Respondents' testimony because of the absence of other witnesses to Defendant Long's statements, because Defendant Long cannot remember what he said to the Respondents during their interviews with him, and because Defendant Long's words are what is at issue in this case. However, what is at issue is Defendant Long's words that were published in the media, not his unpublished words as they may appear in the Respondents' notes or memories. Without repeating the Court's observations regarding the relevance of the information sought, and its minimal role in the development of the Plaintiffs' claims, the Court finds that the Plaintiffs do not have a compelling interest in this information.

When these factors are balanced, the Court believes that the Respondents' asserted privilege outweighs the Plaintiffs' need for the information sought.

## IV.   ORDER

**IT IS, THEREFORE, ORDERED** that Respondent O'Neal's motion to quash Plaintiff Penland's subpoena is **GRANTED;**

**IT IS FURTHER ORDERED** that Respondent Barber's motion to quash Plaintiff Penland's subpoena is **GRANTED;** and

**IT IS FURTHER ORDERED** that the subpoenas issued by Plaintiff Penland to the Respondents are **QUASHED;** and a **PROTECTIVE ORDER** is entered, *sua sponte,* granting Respondents leave *nunc pro tunc* not to attend the noticed depositions or provide the information requested by Plaintiff Penland.