**General William C. WESTMORELAND,**
**Plaintiff,**

v.

**CBS, INC. et al., Defendants.**

**No. 82 Civ. 7913 (PNL).**

United States District Court,
S.D. New York.

April 21, 1983.

Dan M. Burt, David Dorsen, Washington, D.C., for plaintiff.

David Boies, David A. Barrett, Catherine R. Flickinger, Robert H. Baron, Randy M. Mastro (all from Cravath, Swaine), New York City, George Vradenburg, III (CBS), New York City, David Freeman, Greenville, S.C., Victor A. Kovner, New York City, for defendants.

## OPINION & ORDER

LEVAL, District Judge.

Defendants move to dismiss Count IV of the complaint. Plaintiff moves to compel production of a report prepared by defendants, and defendants seek a protective order against its production.

### I

Plaintiff is General William C. Westmoreland, who was the commander of the United States Army in Vietnam from 1964 to 1968. He brings this action against defendant CBS, Inc. and others, alleging libel. The action centers on a CBS documentary film entitled "The Uncounted Enemy: a Vietnam Deception", which was broadcast on January 23, 1982. Westmoreland contends that the film libelled him by accusing him of having conspired to misrepresent the strength of enemy forces in the Vietnam war.

Three days after the broadcast, General Westmoreland held a press conference denouncing the program. CBS News announced that night that it would investigate the accusations. In its May 29 issue, *TV GUIDE* published a critical account of the making of the documentary, expressing the view that CBS had engaged in questionable journalistic practices.

Thereupon, defendant Van Gordon Sauter, President of CBS News, instructed Burton Benjamin, a Senior Executive Producer, to conduct a study of the broadcast.

Benjamin conducted an investigation and on July 8 made a written report of his findings to Sauter (the "Benjamin Report").

After receiving Benjamin's report, Sauter issued on July 15, 1982 a public written statement (the Sauter Memorandum). This memorandum stated:

I asked Burton Benjamin, Senior Executive Producer of CBS News, to conduct a study of the broadcast and its preparation. He approached it as a journalist reporting a complex story. He read the unedited transcripts of some 20 hours of interviews recorded for the broadcast; the full text of General Westmoreland's January 26, 1982 news conference about the broadcast; numerous newspaper and magazine articles, books, portions of the *Congressional Record,* military documents and internal CBS News documents relevant to the broadcast. The broadcast and the Westmoreland news conference were repeatedly screened. Mr. Benjamin interviewed 32 persons—14 in person, 18 by telephone. Twelve of the interviews were with CBS News employees, all in person. Mr. Benjamin's report was presented to me July 8.

The following represents my conclusions and those of Mr. Benjamin and Edward M. Joyce, Executive Vice President of CBS News, about the editorial integrity of the broadcast and the adherence to CBS News Standards in its production.

CBS News stands by this broadcast.

. . . .

[W]e support the substance of the broadcast.

The Sauter Memorandum also went on to criticize certain aspects of the broadcast.

Plaintiff filed his complaint on September 13, 1982. Count IV charges that the Sauter Memorandum was a malicious, inaccurate defamation of the plaintiff.

## II

■ In arguing for the dismissal of Count IV defendants contend that plaintiff fails to plead with sufficient specificity how the Sauter Memorandum is libelous. I find no merit in this contention. Upon a full reading of Count IV, which incorporates by reference substantial passages from the earlier counts, I find it is sufficiently detailed and informative "to enable defendant to respond and to raise the defense of res judicata if appropriate." *See Geisler v. Petrocelli,* 616 F.2d 636, 640 (2d Cir.1980); Rule 8, Fed.R.Civ.P.

The cases defendant cites in which complaints have been found insufficiently precise have involved excessively vague allegations or failure to specify the legal nature of the claim. *E.g., Taylor v. Foremost-McKesson, Inc.,* 656 F.2d 1029 (5th Cir. 1981); *Leo Winter Associates, Inc. v. Department of Health and Human Services,* 497 F.Supp. 429 (D.D.C.1980); *Drummond v. Spero,* 350 F.Supp. 844, 845 n. 1 (D.Vt. 1972). Those cases are not applicable to this pleading.

■ Nor is there merit to the defendants' contention that Count IV must be dismissed in advance of trial because (a) it fails to plead special damages, *see Geisler, supra;* (b) the Sauter Memorandum was a constitutionally protected expression of opinion, *see Hotchner v. Castillo-Puche,* 551 F.2d 910, 913 (2d Cir.1977), *cert. denied,* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977); or (c) the Sauter Memorandum was no more than an exercise of the privilege of reply, *see* Restatement (Second) of Torts, §§ 594, 600, 605A.

## III

■ Plaintiff has demonstrated, and defendants do not seriously dispute, that the Benjamin Report is likely to lead to the discovery of relevant evidence. *See generally* 50 Am.Jur.2d Libel & Slander § 455, *cited in Herbert v. Lando,* 441 U.S. 153, 164–65 n. 12, 99 S.Ct. 1635, 1642–1643 n. 12, 60 L.Ed.2d 115 (1979). The Sauter Memorandum implies that the Benjamin Report supports its conclusions. If the Benjamin Report in fact does not support the conclusions of the Sauter Memorandum, the Benjamin Report itself could be important evidence of the necessary element of malice as to the allegation of libel in the publication of the Sauter Memorandum. Thus as to Count IV, the Benjamin Report might well not only lead to relevant evidence, but also be important evidence (depending of course on its contents). As to the *Uncounted Enemy* broadcast, the Benjamin Report, again depending on its contents, might well lead to relevant evidence on both the issues of truth and malice. Since it studied the making of the documentary, the Report may well lead to evidence of degree of care for accuracy, concern for truthfulness, and possible bias, prejudgment or malice.

Unless defendants can establish entitlement to an overriding privilege, the high likely usefulness of the Report for the discovery of relevant evidence requires its production. *See United States v. Nixon,* 418 U.S. 683, 709–10, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974); *Herbert v. Lando, supra,* 441 U.S. at 175, 99 S.Ct. at 1648.

Defendants contend there is a privilege for confidential self-evaluative analysis. They point to a variety of cases in which courts have found an ad hoc qualified privilege for various kinds of confidential self-evaluation. The cases defendants consider most closely analogous have involved a hospital's evaluation of clinical practices, *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249 (D.D.C.1970), *aff'd without opinion,* 479 F.2d 920 (D.C.Cir.1973), an employer's evaluation of its progress in affirmative action, *Banks v. Lockheed-Georgia Co.,* 53 F.R.D. 283 (N.D.Ga.1971), and a manufacturer's confidential review of the quality of its products, *Lloyd v. Cessna Aircraft Co.,* 74 F.R.D. 518 (E.D.Tenn.1977). They also cite

the example of university faculty discussions concerning tenure decisions. *Compare Keyes v. Lenoir Rhyne College,* 552 F.2d 579 (4th Cir.), *cert. denied,* 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977), *with Gray v. Board of Higher Education,* 692 F.2d 901 (2d Cir.1982). *See generally FTC v. TRW, Inc.,* 628 F.2d 207, 210 (D.C.Cir.1980); 4 Moore's Federal Practice ¶ 26.60[3] n. 1 (Supp.1982).

Defendants, joined by numerous amicus briefs representing various press interests, contend, by analogy to those cases, that the Benjamin Report was a confidential internal study undertaken for purposes of self-evaluation and self improvement. They argue that to require production of such studies will make the press reluctant to engage in self evaluation and will injure the cause of truth in journalism.

■ I have no occasion to consider whether defendants' arguments would prevail in establishing such a privilege on appropriate facts. This is not such a case. For CBS has not treated the Benjamin report as a confidential internal matter. It has relied in public statements on the fact of the Benjamin investigation and on the conclusions expressed in the Report for public justification of its broadcast.

The Benjamin investigation and report are central to the public message of the Sauter Memorandum. This Memorandum offers the fact of CBS' undertaking the investigation as a demonstration of its good faith and responsibility. The Memorandum goes on to proclaim the thoroughness and professionalism with which Benjamin conducted his investigation. It summarizes evidence which Benjamin found. It purports to state what was Mr. Benjamin's conclusion ("The following represents my conclusions and those of Mr. Benjamin ...."), and finally it implies, or states, that the Benjamin report substantiates the conclusions of the *Uncounted Enemy* broadcast (except to the extent of specified criticisms).

CBS cannot at once hold out the Benjamin Report to the public as substantiating its accusations and, when challenged, decline to reveal the Report contending that it is a confidential internal study utilized solely for self-evaluation and self-improvement.

■ CBS' additional claims of privilege invoke the importance of protecting a free press from intrusion and inquisition into the editorial process. Without doubt this is a substantial and important interest, not lightly to be overridden in litigation. *See Herbert v. Lando, supra,* 441 U.S. at 178, 99 S.Ct. at 1650 (Powell, J., concurring); *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); *Baker v. F & F Investment,* 470 F.2d 778 (2d Cir.1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973). In this circuit, reporters' documents may be disclosed "only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources." *In re Petroleum Products Antitrust Litigation,* 680 F.2d 5, 7–8 (2d Cir.) (per curiam), *cert. denied,* —— U.S. ——, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982). *See United States v. Burke,* 700 F.2d 70, 77 (2d Cir.1983). In other litigations, I have declined to permit intrusion by discovery into the editorial or information gathering process of non-party journalists, where the countervailing interests were insufficient. *See Application of Consumers Union,* 495 F.Supp. 582 (S.D.N.Y.1980); *Matter of Forbes Magazine,* 494 F.Supp. 780 (S.D.N.Y.1980).

The question in this case has, however, already been substantially answered by the Supreme Court in *Herbert v. Lando,* which went much further. Although it is true that plaintiff can acquire certain relevant information by other forms of discovery, there are important relevant issues on which the Benjamin Report is the best, if not the only available source. Most important is the issue of malice under Count IV. If the Benjamin Report does not say what the Sauter Memorandum says it says, it could be significant proof of malice or recklessness on CBS' part in issuing Sauter's statement.

As for defendants' contention based on N.Y. Civil Rights Law § 79–h, protecting confidential information generated "in the course of gathering or obtaining news for publication," the Sauter Memorandum was not the publication of news. It was a press release, not a news broadcast.

Defendants' motions are denied. Plaintiff's motion to compel production of the Benjamin Report is granted.

SO ORDERED.