UNITED STATES of America, Plaintiff,

v.

Kenny BINGHAM, et al., Defendants.

No. 89 CR 909.

United States District Court,
N.D. Illinois, E.D.

June 12, 1991.

Debra Gubin, Chicago, Ill., for Kenny Bingham.

Robert Gevirtz, Northbrook, Ill., for Johnny Brown.

Thomas Huyck, Chicago, Ill., for David Carter.

Thomas R. Allen, Chicago, Ill., for Bruce Collins.

Patrick Driscoll, Chicago, Ill., for Herbert Dinkins.

John DeRose, Burr Ridge, Ill., for Paul Downie.

Eugene Steingold, Chicago, Ill., for Stanley Hagler.

Robert Loeb, Chicago, Ill., for Roderick Haygood.

Robert A. Willis, Chicago, Ill., for David Hobbs.

Bradley Harris, North Riverside, Ill., for Darryl Lamb.

Charles J. Aron, Chicago, Ill., for Louis Lomas.

Gerald Collins, Chicago, Ill., for Virn Polk.

Robert Edwards, Chicago, Ill., for Dwayne Price.

William Stevens, Chicago, Ill., for Michael Sing.

Samuel Fifer, Carol Anne Been, Sonnenschein Nath & Rosenthal, Chicago, Ill., for National Broadcasting Co., Inc.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Before the court is a motion filed by a non-party, National Broadcasting Company, Inc.'s subsidiary in Chicago, WMAQ–TV ("NBC"), to quash a subpoena *duces tecum* served upon NBC calling for "any and all taped interviews with Henry Leon Harris, including all outtakes."

## FACTS

Henry Leon Harris, a former high-ranking member of the El Rukn organization and a key government witness, is currently on the witness stand in this criminal case which is being tried to a jury. The defendants on trial are fourteen alleged members of the El Rukn organization charged with racketeering and narcotics conspiracy

as well as other alleged violations of the law. The trial is in its tenth week and it is expected that the trial will last several more weeks. Harris will be on the witness stand for about one week. There is a need for an expeditious determination of the issue raised by NBC's motion.

On June 3, 1991, NBC broadcast on its nightly 10:00 p.m. news program part of an interview of Harris by WMAQ–TV anchorperson Carol Marin that was conducted in 1987. The portion of the interview of Harris broadcast on June 3, 1991 contained statements inconsistent with Harris' testimony to date in this trial.

On June 4, 1991, defendants, pursuant to Federal Rule of Criminal Procedure 17(c), issued the subpoena *duces tecum* quoted above. NBC in response to the subpoena provided a videotape containing the portions of the Harris interview which were broadcast on November 2, 1987, June 6, 1988, September 20, 1988 and June 3, 1991 (the "Harris Broadcast Material"). NBC has refused to produce the outtakes of the Harris interview (the "Harris Interview Outtakes") and moved to quash the subpoena to the extent it requests production of those outtakes.[1]

To properly evaluate NBC's motion to quash, the court ordered NBC to turn over the Harris Interview Outtakes to the court for an *in camera* review. NBC complied with this order. The court has conducted an *in camera* review of the Harris Interview Outtakes and compared the Outtakes to material otherwise available to the parties for their use in questioning Harris during his testimony. For the reasons stated below, the court grants NBC's motion to quash the subpoena for the videotape of the Harris Interview Outtakes and orders NBC to turn over immediately to the defendants the transcript of the Outtakes prepared by the court's official court reporter.

1. "Outtakes" are the videotaped segments of the interview which have not been broadcast.

2. Although the court firmly believes that the transcript of the Harris Interview Outtakes should be disclosed to the defendants, the court

## DISCUSSION

■ In *Branzburg v. Hayes,* 408 U.S. 665, 707, 92 S.Ct. 2646, 2670, 33 L.Ed.2d 626 (1972), the Supreme Court acknowledged the existence of First Amendment protection for newsgathering. Although the Seventh Circuit has not yet addressed the question of the qualified privilege protecting journalists in their newsgathering function, several other Circuits and courts in this district have recognized a qualified newsgathering privilege. *See United States v. LaRouche Campaign,* 841 F.2d 1176, 1180–81 (1st Cir.1988); *United States v. Burke,* 700 F.2d 70, 76–77 (2d Cir.1983); *United States v. Cuthbertson,* 630 F.2d 139, 146 (3d Cir.1980) ("*Cuthbertson I*"); *Silkwood v. Kerr–McGee Corp.,* 563 F.2d 433, 436 (10th Cir.1977); *Zerilli v. Smith,* 656 F.2d 705, 712–714 (D.C.Cir.1981); *Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co.,* 455 F.Supp. 1197, 1202 (N.D. Ill.1978); *U.S. v. Lopez,* 14 Med.L.Rptr. 2203, 1987 WL 26051 (N.D.Ill.1987). The qualified privilege has been held to apply to criminal and civil cases. *See Burke,* 700 F.2d at 77. This court therefore also will recognize the existence of a qualified newsgathering privilege and applies that privilege to the Harris Interview Outtakes.

■ The Supreme Court has determined that a subpoena such as that served upon NBC by the defendants under Federal Rule of Criminal Procedure 17(c) reaches only materials that are "admissible as evidence". *Bowman Dairy Co. v. United States,* 341 U.S. 214, 221, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951). Harris is currently on the witness stand still on direct examination by the government. Portions of his testimony to this point are directly contradicted by portions of the Harris Broadcast Material.[2] Furthermore, the court, after its *in camera* review, has determined that numerous statements in the Harris Interview Outtakes also contradict Harris' direct

voluntarily refrains from detailing in this opinion the statements made by Harris in the Outtakes in order to avoid premature disclosure of that information pending possible appeal of this decision.

examination testimony.[3] Consequently, the court does not believe that defendants in issuing the Rule 17(c) subpoena to NBC are on a fishing expedition. To the contrary, defendants are seeking highly relevant prior inconsistent statements by Harris.

The videotaped statements may be admissible for impeachment purposes upon compliance with Fed.R.Evid. 613.[4] However, defense counsel must first question Harris pursuant to Fed.R.Evid. 613(b) before a part of the videotaped interview, whether Broadcast or Outtakes, would be admitted as extrinsic evidence to impeach Harris. While questioning Harris, defense counsel need not show to him the prior inconsistent statement but must provide it to government counsel when requested to do so pursuant to Fed.R.Evid. 613(a). However, before reaching this point, defense counsel must first know the substance of the prior statements by Harris. To gain that knowledge, defense counsel must have access to the statements. It is the access to the statements in the Outtakes that NBC seeks to avoid by its motion to quash.

When a privilege, such as the qualified newsgathering privilege, is grounded in constitutional policy, a "demonstrated, specific need for evidence" must be shown before it can be overcome. *Riley v. City of Chester*, 612 F.2d 708, 716 (3d Cir.1979), quoting *United States v. Nixon*, 418 U.S. 683, 713, 94 S.Ct. 3090, 3110, 41 L.Ed.2d 1039 (1974). This court must balance the defendants' need for the material against the interests underlying the privilege in order to determine whether there are countervailing interests which will require the privilege to yield in a particular case. *Cuthbertson I*, 630 F.2d at 148.

## I. NBC'S INTERESTS

The public has a paramount interest in "the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment." *Burke*, 700 F.2d at 77. Reporters should "be encouraged to investigate and expose, free from unnecessary government intrusion, evidence of criminal wrongdoing." *Id.* In holding that the reporters' qualified privilege applies to nonconfidential as well as confidential sources, the Third Circuit stated that

> The compelled production of a reporter's resource materials can constitute a significant intrusion into the newsgathering and editorial processes. (citation omitted.) Like the compelled disclosure of confidential sources, it may substantially undercut the public policy favoring the free flow of information to the public that is the foundation for the privilege. (citation omitted.)

*Cuthbertson I*, 630 F.2d at 147. *See also Gulliver's Periodicals*, 455 F.Supp. at 1203. However, the lack of a confidential source is an important element in balancing the defendants' need for the material against the interests of the journalist in preventing production in a particular case. *Cuthbertson I*, 630 F.2d at 147. *See LaRouche*, 841 F.2d at 1181 (no authoritative source demonstrates how any chilling effect could result from the disclosure of

---

**3.** Unlike the situation in *United States v. Cuthbertson*, 651 F.2d 189 (3d Cir.1981) ("Cuthbertson II"), cited by NBC in its supplemental brief, Harris has already testified in a manner inconsistent with the videotaped statements he made in both the Broadcast Material and the Interview Outtakes. Thus, the subpoenaed material is highly relevant.

**4. Rule 613. Prior Statements of Witnesses**
    **(a) Examining witness concerning prior statement.** In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the

witness at that time, but on request the same shall be shown or disclosed to opposing counsel.
    **(b) Extrinsic evidence of prior inconsistent statement of witness.** Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2).

statements made for publication without any expectations of confidentiality).

NBC believes that the possibility of having outtakes subject to subpoena would present reporters with a "Hobson's choice" whether to retain material not used in a broadcast for possible use in the future and subject to subpoena, or to destroy that material to avoid disclosure thereby losing the material for any future journalistic use. NBC claims that such a choice will chill the editorial judgment of reporters.

To the extent that compelled disclosure of outtakes becomes commonplace, this is a legitimate concern by NBC. If courts remain sensitive to the First Amendment protections of the Constitution and the need to minimize intrusions into the newsgathering privilege by only requiring disclosure when other legitimate constitutional interests outweigh the First Amendment protections, then NBC's concerns will be minimized to the maximum extent possible. *See La-Rouche*, 841 F.2d at 1182 (court recognized this and other media concerns—yet found defendants' interests outweighed these concerns). In this context, NBC's interests must be weighed against defendants' interests.

## II. DEFENDANTS' INTERESTS

█ Defendants' interests concern their constitutional rights to a fair trial under the Fifth Amendment and to compulsory process and effective confrontation and cross-examination of adverse witnesses under the Sixth Amendment. *LaRouche*, 841 F.2d at 1182. The rights of the party seeking disclosure override the reporters' First Amendment interests only upon a clear and specific showing that the information is highly relevant and material, necessary to the maintenance of the claim, and not obtainable from other available sources.

*United States v. Burke*, 700 F.2d at 76–77; *LaRouche v. National Broadcasting Company*, 780 F.2d 1134, 1139 (4th Cir.1986); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, *modified*, 628 F.2d 932 (5th Cir. 1980), *cert. denied* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981); *Cuthbertson I*, 630 F.2d at 148; *Silkwood*, 563 F.2d at 438; *United States v. Lopez*, 14 Med.L. Rptr. 2203, 2205, 1987 WL 26051 (N.D.Ill. 1987); *Gulliver's Periodicals*, 455 F.Supp. at 1202–03.

The court has determined that statements of Harris contained in the Harris Interview Outtakes are highly material and relevant to defendants' case. In other words, portions of the outtakes address the issues in this case and tend to make the existence of material facts more probable or less probable than they would be without the evidence. *See* Fed.R.Evid. 401. In *LaRouche*, the First Circuit affirmed an order for an *in camera* review by pointing out that the witness at issue was a major witness who was closely connected with the defendants in activities that were the subject of their indictment and that the material sought was an extensive interview likely to offer the basis for impeachment. 841 F.2d at 1182.

In this case, Harris is currently on the witness stand on direct examination in this jury trial. All parties to this trial acknowledge that he is a key government witness who held a high-level position in the El Rukn organization and participated in or observed many of the activities alleged in the indictment. Certain prior statements by Harris in the Harris Interview Outtakes are inconsistent with the direct examination he has given thus far. These prior inconsistent statements are proper subject matter for cross-examination when it commences later this week.[5]

---

5. NBC argues that defendants' subpoena should be limited to subjects that defendants have identified as the basis for seeking the outtakes. Specifically, NBC claims that defendants' counsel has stated in court that they are only seeking the outtakes for statements concerning (a) Harris' knowledge of the El Rukn organization and (b) Harris' familiarity with the argot or code language of the El Rukn members. The court does

not believe that the comments made by defense counsel limit the scope of the subpoena. However, even if the comments do limit the subpoena's scope, the court has found that the Harris Interview Outtakes contain statements by Harris regarding the El Rukn organization that are inconsistent with statements made by Harris during his direct examination and are not cu-

Additionally, there has been a sufficient showing that the material sought is necessary or critical to the maintenance of the defense. Attacking the credibility of the government's witnesses including Harris is central to the defense. Defendants' opening statements and the proceedings of the trial to date have shown that a substantial portion of the defendants' strategy in this trial is to discredit the government's witnesses—many of whom, like Harris, are former El Rukn members who are currently in prison after being convicted of serious crimes and after having made prior statements which are inconsistent with their testimony at this trial.

Harris himself has made prior statements in addition to statements on Interview Outtakes that are inconsistent with his direct examination testimony. NBC's counsel has argued that the subpoenaed Harris Interview Outtakes are cumulative of the other prior statements made by Harris, including statements made at a previous deposition and at a South Carolina state court trial. After the court's *in camera* review of the Harris Interview Outtakes and the court's review of other materials concerning Harris that are presently available to defense counsel, the court finds that numerous statements inconsistent with Harris' direct testimony in this trial are contained in the Outtakes and not in the other material.

Furthermore, federal courts have recognized that the evidentiary value of videotaped statements are generally great due to their unique nature. In *Cuthbertson I,* the defendants served a television network with a subpoena *duces tecum* for various materials, including verbatim and substantially verbatim statements of witnesses that the government intended to call at trial. When discussing the ability of the defendants to subpoena verbatim and substantially verbatim statements, the Third Circuit in *Cuthbertson I* stated,

> By their very nature, these statements are not obtainable from any other source. They are unique bits of evidence that are frozen at a particular place and time.

mulative of other evidence available to defen-

Even if the defendants attempted to interview all of the government witnesses and the witnesses cooperated with them, the defendants would not obtain the particular statements that may be useful for impeachment purposes at trial. Thus, we think that the defendants have met their burden of establishing that the information ... is not available from another, unprivileged source.

630 F.2d at 148. *See also LaRouche,* 841 F.2d at 1180 (court found that, by definition, no other source is available for outtakes).

## III. BALANCING THE INTERESTS

The court in fashioning its ruling must remain sensitive to and protective of defendants' need to know what prior inconsistent statements are on the Harris Interview Outtakes and yet the court must also remain sensitive to and protective of NBC's qualified newsgathering privilege. In balancing the interests, the court believes it has to be able to reach a middle ground that provides the defense the information needed and yet minimize the intrusion into NBC's newsgathering privilege.

The court has asked its official court reporter to transcribe the Harris Interview Outtakes and the court orders the turnover of that transcript to the defense. The turnover of the Harris Interview Outtakes transcript makes it unnecessary to compel the turnover at this time of the actual videotape which contains the Harris Interview Outtakes. The transcript of the Harris Interview Outtakes enables counsel for the parties to this case to formulate and ask questions of Harris to reveal to the jury his prior inconsistent statements on the Harris Interview Outtakes videotape. If in answering the questions Harris denies making the prior inconsistent statements contained on the Harris Interview Outtakes, it would then become appropriate for counsel to seek to complete the impeachment by introducing the specific part of the Harris Interview Outtakes that had been denied by Harris. At that point, the relevance of the actual videotape would be even greater

dants.

than it is now and this court would compel the turnover of that highly relevant portion of the Harris Interview Outtakes.

The court believes this procedure minimizes to the extent possible the intrusion on NBC's newsgathering privilege and acknowledges NBC's propriety rights in the Harris Interview Outtakes videotape while according defense counsel the information they currently need to cross-examine Harris.

The court believes that the inclusion of some cumulative statements in the complete transcript of the Harris Interview Outtakes does not create a significant intrusion into NBC's privilege, especially when balanced against counsel's need to see the questions and answers of the interview in context.

## CONCLUSION

For these reasons, the court at this time grants NBC's motion to quash the subpoena for the videotape of the Harris Interview Outtakes and orders the immediate turnover to the defense of a transcript of the Harris Interview Outtakes prepared by the court's official court reporter.