Eugene **NEAL**, Plaintiff,

v.

**CITY OF HARVEY, ILLINOIS;** David Johnson; et al., **Defendants.**

No. 96 C 1464.

United States District Court,
N.D. Illinois,
Eastern Division.

May 22, 1997.

David A. Blutcher, Chicago, IL, Stuart Joseph Bobrow, Michelle M. Klute, Law Offices of Stuart J. Bobrow & Associates, Chicago, IL, for Plaintiff.

John A. Hiskes, Michael Jay Marovich, Timothy Charles Lapp, Buikema, Hiskes, Dillner, O'Donnell & Marovich Ltd., South Holland, IL, for City of Harvey, IL, Art Nealy.

John A. Hiskes, Michael Jay Marovich, Timothy Charles Lapp, Buikema, Hiskes, Dillner, O'Donnell & Marovich Ltd., South Holland, IL, James D. Montgomery, John Gergets, James D. Montgomery & Associates, Ltd., Chicago, IL, for David Johnson.

John A. Hiskes, Michael Jay Marovich, Timothy Charles Lapp, Buikema, Hiskes, Dillner, O'Donnell & Marovich Ltd., South Holland, IL, Stephen Aron Glickman, Stephen A. Glickman, P.C., Chicago, IL, for Ronnie Burg.

Ronald Kawanna, Jr., Lawrence P. Gulotta, Gulotta & Kawanna, Calumet City, IL, for Lawrence Patterson, Ron Cross, Bryan Patterson.

Ronald Kawanna, Jr., Edward A. Antonietti, Lawrence P. Gulotta, Gulotta & Kawanna, Calumet City, IL, for James McGee.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Eugene Neal filed a Section 1983 suit against the City of Harvey and certain public officials, as a result of his arrest in connection with a shooting of a Harvey police officer. One of the defendants, the former mayor of Harvey, David Johnson,[1] served a deposition subpoena on a non-party Sylvia Gomez, an investigative reporter with a Chicago television station, WBBM–TV. Ms. Gomez moved to quash the subpoena. For the following reasons, the motion is granted.

The defendants seek to depose Ms. Gomez because, in response to their interrogatories, Mr. Neal identified Ms. Gomez as having knowledge of statements made by Mr. John-

---

1. Although Mr. Johnson alone served the subpoena, Ms. Gomez' knowledge pertains to statements made by Mr. Johnson and one of his co-defendants, police officer Ron Cross, and the response to Ms. Gomez' motion to quash was filed by Mr. Johnson and Ronnie Burge, another co-defendant. Therefore, in referring to the author of the subpoena, I will use the collective term "the defendants."

son and co-defendant Ron Cross regarding Mr. Neal's arrest, detainment, and release.

■ Ms. Gomez affirms that she was not an eye witness to the incidents out of which Mr. Neal's suit arises. She states that any knowledge she has regarding the facts alleged in the complaint was obtained during the course of her newsgathering activities for WBBM–TV. Facts acquired by a journalist in the course of newsgathering enjoy a qualified privilege against compelled disclosure. *Shoen v. Shoen,* 5 F.3d 1289, 1292 & n. 5 (9th Cir.1993) (citing cases); *United States v. Bingham,* 765 F.Supp. 954, 956 (N.D.Ill. 1991); *United States v. Lopez,* No. 86 CR 513, 1987 WL 26051, at *1 (N.D.Ill. Nov.30, 1987); *Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co.,* 455 F.Supp. 1197, 1201–2 (N.D.Ill.1978).[2]

> Rooted in the First Amendment, the privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice.

*Shoen,* 5 F.3d at 1292.

■ The party seeking information obtained by a journalist in the course of newsgathering must show (1) that the information is not available from a non-journalistic source, and (2) that it is highly relevant and material to the case at bar. *Shoen v. Shoen,* 48 F.3d 412, 416 (9th Cir.1995); *Bingham,* 765 F.Supp. at 958; *Lopez,* 1987 WL 26051, at *2; *Gulliver's Periodicals, Ltd.,* 455 F.Supp. at 1202–03.[3] The defendants have not met either requirement.

■ *Lopez* is particularly on point. In that case, the defendant had given an interview and was seeking a videotape of the outtakes of that interview. 1987 WL 26051, at *1. The court noted that, in addition to the defendant, her co-defendant's attorney attended the interview. The court concluded that "[b]ecause two witnesses were present at the interview (including [the defendant] herself), [the defendant] has not satisfied her burden of showing that the information she seeks is not available from a non-journalistic source." *Id.* at *2.

In the present case, the defendants are seeking to depose Ms. Gomez because, in response to the defendants' interrogatories, the plaintiff identified Ms. Gomez as having knowledge of statements made by Messrs. Johnson and Cross. Obviously Mr. Johnson knows what he himself said. He can, if necessary, depose his co-defendant about what he said. If defendants are concerned that plaintiff may attempt to contradict what they say they said, they can depose plaintiff about any conversation between plaintiff and Ms. Gomez as well as any knowledge by plaintiff of Ms. Gomez' alleged knowledge.[4] Defendants' statement that any knowledge Ms. Gomez possesses in regard to the plaintiff's claim is hers alone and would not be obtainable through any other sources is frivolous in the context of this case and defendants' refusal to be more specific about their alleged inability to obtain alternative discovery. This conclusory statement does not demonstrate that the defendants "exhausted all reasonable alternative means for obtaining the information." *Shoen,* 5 F.3d at 1296 (citing *Zerilli v. Smith,* 656 F.2d 705, 713 (D.C.Cir.1981)).

■ The showing that the sought information is highly relevant and material must be specific. *Bingham,* 765 F.Supp. at 957, 958; *Lopez,* 1987 WL 26051, at *2 (quoting *Vuitton et Fils S.A. v. Karen Bags, Inc.,* 600

---

**2.** All Circuits, except the Sixth, which have addressed this issue have interpreted *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), as establishing this privilege. *Shoen,* 5 F.3d at 1292 n. 5.

**3.** Some courts have required the above showing to enable the party to overcome journalistic privilege. *E.g., Shoen,* 48 F.3d at 416. Others have conceptualized the inquiry as a balancing test, whereby the party seeking information must set forth its interests, such as relevance and unavailability, which the court weighs against the interests of the press. *E.g., Bingham,* 765 F.Supp. at 957.

**4.** Further, Ms. Gomez contends and the defendants do not dispute that at least some of these statements were made during press conferences at which many non-press persons were present.

F.Supp. 667, 670 (S.D.N.Y.1985)). A high degree of relevance means that the information "goes to the heart of[ or] is crucial to[ ] the claims made by the discovering party." *Gulliver's Periodicals, Ltd.,* 455 F.Supp. at 1202–03. Moreover, "there must be a showing of actual relevance; a showing of potential relevance will not suffice." *Shoen,* 48 F.3d at 416; *see also Vuitton et Fils S.A.,* 600 F.Supp. at 671.

■ The defendants argue that the facts surrounding Ms. Gomez' newsgathering activities, such as dates of interviews, times of interviews, subjects interviewed, and other parties present during interviews, should not be subject to privilege. They distinguish the above from communications obtained by Ms. Gomez in the course of reporting.[5] However, the names of sources are covered by the privilege. *E.g., Gulliver's Periodicals, Ltd.,* 455 F.Supp. at 1202. Moreover, the policy which underlies the existence of journalistic privilege would be equally undermined by compelling reporters to reveal factual information surrounding investigations, as well as the content of their communications with the sources.[6]

■ The defendants' argument that since Ms. Gomez is not seeking to protect a confidential source, the privilege should not apply has been repeatedly rejected. *Lopez,* 1987 WL 26051, at *1 (citing cases). The *Bingham* court acknowledged that "the lack of confidential source is an important element in balancing the defendants' need for the material against the interests of the journalist in preventing production in a particular case" and permitted limited discovery. 765

F.Supp. at 957, 959–60. However, the court engaged in the balancing inquiry only after concluding that the sought information was highly material, relevant, and "critical to the maintenance of the defense," *id.* at 958–59, a showing that the defendants in this case have not made.

Finally, the defendants fear that Mr. Neal will call Ms. Gomez to testify on his behalf, thereby surprising the defendants with information they had no opportunity to discover. The defendants' concern is unfounded. My review of the interrogatory answers reveals that, contrary to the defendants' insistence, Mr. Neal never identified Ms. Gomez as a favorable witness. In the same interrogatory answer, the plaintiff stated that numerous individuals will testify regarding aspects of his case. However, with respect to Ms. Gomez, Mr. Neal specifically did not say that she will testify or be a witness and it is probable that if plaintiff should attempt to call her, she will assert the same privilege in response to plaintiff's subpoena that she has asserted here. Further, the defendants' request that I quash Mr. Neal's trial subpoena of Ms. Gomez is premature; there is no subpoena to quash.

## Conclusion

For the reasons set forth above, Ms. Gomez' motion to quash the deposition subpoena is granted.

---

5. In support of this proposition, the defendants cite *Brinston v. Dunn.* 919 F.Supp. 240 (S.D.Miss.1996). The scope of discovery allowed in *Brinston,* however, is much narrower than what the defendants seek. In *Brinston,* the court allowed the defendant to depose the reporter "on the limited issue" of the content of the article he wrote and the accuracy of the statements attributed to the plaintiff by the article. The court did not allow the defendant to inquire about "unpublished information obtained by the [reporter] in the course of his journalistic duties." *Id.* at 244.

6. The privilege exists to ensure " 'the maintenance of a vigorous, aggressive and independent press'," *Bingham,* 765 F.Supp. at 957 (quoting *United States v. Burke,* 700 F.2d 70, 77 (2d Cir.

1983)), which facilitates a " 'free flow of information to the public'." *Id.* (quoting *United States v. Cuthbertson,* 630 F.2d 139, 147 (3d Cir.1980)). The courts have recognized that "[t]he compelled production of a reporter's resource materials can constitute a significant intrusion into the newsgathering and editorial processes," *id.* (quotations omitted), may create a disincentive for compiling and preserving research material, and will burden the time and resources of journalists in responding to subpoenas. *United States v. LaRouche Campaign,* 841 F.2d 1176, 1182 (1st Cir.1988). Further, it is undesirable that a journalist perform investigative work for the judicial system or a private citizen. *Id.*