Rosalind **WARNELL** and Suzette Wright, each individually and on behalf of other similarly situated persons, Plaintiffs,

v.

**FORD MOTOR COMPANY and Ford Stamping Plant, Defendants.**

No. 98 C 1503.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 10, 1998.

Keith L. Hunt, Keith L. Hunt & Associates, P.C., Katherine Ann Rodosky, Hunt & Associates, P.C., Chicago, IL, Edward R. Vrdolyak, Attorney at Law, Chicago, IL, for plaintiffs.

James W. Gladden, Jr., Marcia E. Goodman, Maritoni D. Kane, Kristen Wenstrup Crosby, Shannon Michelle Moritz, Mayer, Brown & Platt, Chicago, IL, Brian D. Boyle, Evelyn L. Becker, Teresa Kwong, O'Melveny & Myers, Washington, DC, Catherine B Hagen, Mark Teuton, O'Melveny & Myers, Newport Beach, CA, for Ford Motor Company.

James W. Gladden, Jr., Marcia E. Goodman, Maritoni D. Kane, Kristen Wenstrup

Crosby, Shannon Michelle Moritz, Mayer, Brown & Platt, Chicago, IL, Samuel Fifer, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Ford Stamping Plant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiffs, Rosalind Warnell and Suzette Wright, sued Ford Motor Company and Ford Stamping Plant on behalf of a purported class including all employees in the Ford organization who work or have worked at the Ford Assembly Plant and the Chicago Stamping Plant from 1993 through the present time. The complaint alleges race and sex discrimination claims under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981, as well as state common law claims. A consolidated case, *Rapier v. Ford Motor Co.,* 98 C 5287, also alleges Title VII and common law claims against Ford and is brought on behalf of a purported class of women employed at the Assembly and Stamping Plants since January 15, 1996. The plaintiffs now seek to compel the National Broadcasting Company ("NBC") to turn over a videotape depicting a " 'sex party' and/or Christmas party" held by Ford employees, portions of which were aired on a June 1, 1998 broadcast of the news magazine Dateline NBC ("Dateline"). For the following reasons, the motion to compel is granted.

### Background

On March 12, 1998, the plaintiffs filed this lawsuit against Ford alleging various claims including sexual harassment and sex discrimination. On June 1, 1998, NBC broadcast a report on a program called "Dateline" titled "Crossing the Line?" (the "report"). The report examined allegations of sexual harassment and sex discrimination at Ford plants in Chicago. Featured in the report were excerpts from a home videotape depicting a party attended by Ford employees, prostitutes, and strippers. "Dateline" reported that the videotape was ten years old and that it depicted a holiday party which took place off-site.

According to the producer of the report, Mark Feldstein, the home videotape was ob-

tained after months of extensive investigation. Mr. Feldstein submitted an affidavit stating that the source of the videotape provided the tape to NBC after obtaining Mr. Feldstein's agreement "(1) to protect the confidentiality of the identity of the source, and (2) to broadcast only those portions of the videotape that did not reveal in any fashion the identity of the source." (Feldstein Aff. ¶ 6.) On June 9, 1998, the plaintiffs served a subpoena on NBC seeking the original or a duplicate copy of the videotape. NBC refused to produce it, citing statutory and constitutional journalists' privileges. The plaintiffs now seek to compel production of the tape.

### Motion to Compel

Information obtained by a journalist in the course of gathering news may be protected from disclosure by a qualified, reporters' privilege. *Shoen v. Shoen,* 5 F.3d 1289, 1292 & n. 5 (9th Cir.1993) (collecting cases), *Neal v. City of Harvey,* 173 F.R.D. 231, 233 (N.D.Ill.1997), *United States v. Bingham,* 765 F.Supp. 954, 956 (N.D.Ill. 1991), *Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co.,* 455 F.Supp. 1197, 1201–02 (N.D.Ill.1978). When a party seeks disclosure of information that is protected by the privilege, the court should consider whether the information is available from other sources and whether it is highly relevant to the case at bar. *Neal,* 173 F.R.D. at 233.

The plaintiffs first argue that the videotape is a piece of physical evidence not covered by any privilege. When deciding if a person may invoke the reporters' privilege, the critical question is whether the person obtained the material while "gathering news for dissemination to the public." *Shoen,* 5 F.3d at 1293. NBC submitted an affidavit stating that Mr. Feldstein obtained the videotape as a result of an extensive investigation for the purpose of the "Dateline" broadcast.

The plaintiffs argue that nonetheless the tape is not privileged because they are not asking for the identity of the source, and because production of the tape would not reveal the identity of the source. Federal

courts are split as to whether the reporters' privilege applies when confidentiality is not at issue. One approach is to apply the privilege to a journalist's resource materials even in the absence of a confidentiality issue, but to consider nonconfidentiality as a factor diminishing the journalist's interest in nondisclosure. *Shoen*, 5 F.3d at 1295. Another approach is simply to apply regular discovery rules. *Gonzales v. National Broadcasting Co.*, 155 F.3d 618, 626 (2d Cir.1998) (holding that there is no reporters' privilege for nonconfidential information).[1] NBC argues that it obtained the videotape from a confidential source that would be revealed if the tape were produced. Thus NBC claims that it is entitled to protection under the reporters' privilege and under an Illinois statute that protects a reporter from disclosing the reporter's source of information.[2]

In support of this claim, NBC provided the court with an affidavit by Mr. Feldstein. Mr. Feldstein states in his affidavit that if the tape is made available to plaintiffs,

> The source's identity would be revealed, both by the audio accompanying the videotape, as well as by a viewer determining which person present at the "sex party" presumably videotaped the party because he or she did not appear in any of the footage. (Feldstein Aff. ¶ 8.)

Having viewed the videotape, I conclude that this statement cannot be supported.

First, the tape indicates that many people (perhaps 100, or, as NBC conceded in court, "dozens") were present at the party. Thus, unless every Ford employee is alleged to have been at the party, there is no reason to believe that since a particular employee—the cameraman—is not shown, his identity would be revealed. Second, this was not a case of surreptitious taping. The tape shows people acting out for the camera, asking if the cameraman got a shot of this or that, being told to get out of the way so the cameraman could get a better shot, and asking for a copy of the tape. Anyone at the party knew who was making the film. Finally, there is no evidence that it was the cameraman who supplied the tape to NBC. As just noted, people can be heard on the tape asking for copies, and it seems at least as likely as not that the tape was in fact copied.

In a letter provided to the court following my statement in a hearing on this matter that I thought the affidavit was intentionally misleading, NBC says that its source is concerned that production of the tape could lead to identification of the cameraman (presumably, whether or not he is the source) and his friends. The only way the cameraman might be identified would be by his voice. A voice that may be the cameraman's can be heard occasionally on the tape. (I estimate that the voice can be heard for a minute or less of the entire one hour and 42 minute tape). Unless there is in fact more reason than appears at this point to conclude that the cameraman supplied the tape (and his identity, as already stated, was no secret to the many people at the party), there is no basis for protecting his identity. But if there is some basis for protecting the voice of the cameraman, his voice—or the part of the tape where he may be speaking—can be redacted. As far as identification of the "friends" at the party, that is the point of seeking production. NBC has a limited ability to protect its sources; it has no privilege to protect the source's friends who are the subject of the story and potentially the subject of the lawsuit.

■ For all of these reasons, weighing in favor of disclosure is the absence of confidentiality. It is far from a secret that the party was videotaped. Many, if not all, of the people there were openly videotaped, and anyone who was present could identify the cameraman. Also, the plaintiffs are not asking NBC to name the source, and as discussed above I do not find support for Mr.

**1.** The Second Circuit concluded that, "[in] sum, there is no indication that journalists' ability to obtain news will be diminished if there is no privilege for nonconfidential information, or that the editorial process will be hampered or news organizations overburdened by unreasonable discovery requests." *Gonzales*, 155 F.3d at 627.

**2.** *See* 735 ILCS § 5/8–901 ("No court may compel any person to disclose the source of any information obtained by a reporter except as provided in ... this Act"). A source is defined as "the person or means from or through which the news or information was obtained." 735 ILCS § 5/8–902(c).

Feldstein's statement that the source would be revealed if the tape is produced.

In addition, after viewing the unredacted videotape I agree with the plaintiffs that it is relevant to their claims. Plaintiffs allege that parties such as the one depicted on the tape were well known in the workplace and that graphic invitations and pictures were distributed at work. They also say that these parties continued until shortly before the lawsuit was filed and that both workers and supervisors attended the parties. Assuming the truth of plaintiffs' allegations regarding advertisement and distribution of pictures at work, the continuation of the parties until recently, and the attendance of workers and supervisors, the tape could provide evidence that would support plaintiffs' claims.

The tape depicts a party attended by many people—whether 100 or dozens—at which a number of women described by the parties as strippers and prostitutes gradually strip, walk about, "dance," engage in physical contact with guests (initiated by both guests and the unclothed women), and lie on the floor or a pool table. "Close up" shots by the camera on breasts and genital areas are frequent. In addition, at the end of the tape, apparently after the strippers have left, there is a depiction of what appears to be unwanted kissing and touching of a female guest (presumably a Ford employee) by one of the male guests (allegedly a Ford employee).

NBC and Ford rely heavily on the fact that the tape is said by NBC to be ten years old and that the party was held off-site. In fact, there is nothing on the tape to indicate that it is that old, and NBC's statement appears to be based on hearsay. Assuming, however, that the tape is indeed old, the alleged continuation of similar parties until recently, together with the other factors discussed above, is sufficient to justify discovery of the tape. As to the fact that the party was held off-site, if it was a holiday party held by and for Ford employees, including supervisors, and was advertised and discussed at work, it is relevant regardless of where it was held.

Finally, the plaintiffs have also adequately alleged that they exhausted other potential sources of the tape before moving to compel NBC to produce it. They have not been able to discover the source of the tape in depositions. They have also subpoenaed other individuals in addition to NBC, none of whom produced a copy of the tape.

*Conclusion*

NBC's assertion that production of the videotape would reveal the identity of the tape's source cannot be supported. The tape is relevant and reasonably calculated to lead to the discovery of admissible evidence as required pursuant to Fed.R.Civ.P. 26(b). In addition, the absence of confidentiality, together with the tape's relevancy to the sexual harassment claims and the plaintiffs' inability to get the tape from other sources, overcomes any reporters' privilege claimed by NBC. Therefore the plaintiffs' motion to compel NBC to produce the " 'sex party' and/or Christmas party" tape is granted.